824 A.2d 1153

**Edward MISHOE, Appellant,**

v.

**ERIE INSURANCE COMPANY, Appellee.**

**and**

**Nancy L. Hamer, Appellant,**

v.

**Federal Kemper Insurance Co., Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 2001.

Decided May 30, 2003.

Eric L. Keepers, Joseph Roda, Lancaster, for Edward Mishoe.

John M. Gallagher, for The Pennsylvania Trial Lawyers' Association.

Randy Lee Varner, Thomas B. Schmidt, Donna Louise Fisher, Harrisburg, for Erie Insurance Company.

Thomas L. Isenberg, Harrisburg, Robert E. Kelly, for Pennsylvania Defense Institute.

Joseph John Nypaver, Altoona, for Nancy Hamer.

Dara A. DeCourcy, Pittsburgh, for Federal Kemper Insurance Company.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

Justice, NIGRO.

The question presented in this case is whether there is a right to a jury trial in a bad faith action pursuant to 42 Pa.C.S. § 8371. We hold that there is not.

In the first of these consolidated cases, Appellant Edward Mishoe suffered permanent injuries in an automobile collision in Lebanon County, Pennsylvania. Mishoe recovered the maximum amount of coverage available to him under the other driver's insurance policy, and then requested $600,000.00 in underinsured motorist benefits from his own insurer, Appellee Erie Insurance Company ("Erie"). Erie first offered to settle the matter for $75,000.00 and later increased its offer to $125,000.00. Dissatisfied with both of these offers, Mishoe invoked the arbitration provision in the insurance policy. The arbitrators awarded Mishoe $1,185,000.00, or about nine times the amount of Erie's highest offer. Consequently, Mishoe sued Erie in the Court of Common Pleas of Lebanon County, claiming that Erie had acted in bad faith pursuant to 42 Pa.C.S. § 8371. Mishoe demanded a jury trial, but the trial court struck the jury demand.

In the second case, Appellant Nancy L. Hamer was injured in an automobile collision in Blair County, Pennsylvania. Af-

ter receiving the maximum amount of coverage to which she was entitled under the other driver's insurance policy, Hamer sought underinsurance benefits from her own insurer, Appellee Federal Kemper Insurance Company ("Kemper"). Kemper offered to settle the matter for $5,000.00, but Hamer rejected this offer and chose to proceed to arbitration. The arbitrators awarded Hamer $66,000.00, or about thirteen times the amount of Kemper's offer. As a result, Hamer filed suit against Kemper in the Court of Common Pleas of Blair County, claiming that Kemper had acted in bad faith under 42 Pa.C.S. § 8371. Hamer demanded a jury trial, but the trial court refused the jury demand.

On appeal, the Superior Court consolidated the two cases, reversed the trial court orders refusing the jury demands, and remanded the cases for jury trials. Erie and Kemper filed a petition for allowance of appeal and, in a *per curiam* order, we remanded the matter to the Superior Court for reconsideration in light of our decision in *Wertz v. Chapman Township*, 559 Pa. 630, 741 A.2d 1272 (1999). 561 Pa. 604, 752 A.2d 401 (2000). On remand, the Superior Court applied *Wertz* and affirmed the trial court orders, holding that neither section 8371 nor the Pennsylvania Constitution provide for the right to a jury trial for claims arising under section 8371. 762 A.2d 369 (Pa.Super.2000). We granted Mishoe's and Hamer's petitions for allowance of appeal, 566 Pa. 666, 782 A.2d 547 (2001), and now affirm.

Section 8371 of the Judicial Code provides as follows:

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. Mishoe and Hamer advance two claims in support of their conclusion that the right to a jury trial applies in cases arising under this section: that the section itself provides for the right to a jury trial, and that the Pennsylvania Constitution guarantees a jury trial for claims under section 8371.

With respect to Mishoe and Hamer's statutory argument, we note that our role in statutory interpretation matters is to give effect to the intent of the General Assembly.[1] *See* 1 Pa.C.S. § 1921; *Pantuso Motors, Inc. v. Corestates Bank, N.A.,* 568 Pa. 601, 798 A.2d 1277, 1281–82 (2002). Thus, if possible, statutes must be construed so that every word is given effect. *See* 1 Pa.C.S. § 1921(a); *Pantuso Motors,* 798 A.2d at 1282. In giving effect to the words of the legislature, "we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *O'Rourke v. Department of Corr.,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Moreover, the words and phrases used in each statute are ordinarily to be construed according to their common usage. *See* 1 Pa.C.S. § 1903(a); *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002); *Pantuso Motors,* 798 A.2d at 1282. Where terms have acquired a specialized meaning, however, we must apply those terms according to such connotations. *See* 1 Pa.C.S. § 1903(a); *Pantuso Motors,* 798 A.2d at 1282. If, after applying the foregoing principles, we find that a statute is unclear, we may ascertain the General Assembly's intent by considering a variety of other statutory construction factors. *See* 1 Pa.C.S. § 1921(c); *O'Rourke,* 778 A.2d at 1201–05. On the other hand, if a statute is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Bowser,* 807 A.2d at 835; *Ramich v. Worker's Comp. Appeal Bd. (Schatz Elec., Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001).

1. We also note that, in general, we will not reach a constitutional issue where it is possible to decide the matter on a non-constitutional basis. *See P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 723 A.2d 174, 176 (1999).

In *Wertz,* which prompted our remand to the Superior Court in the instant case, this Court was asked to determine whether the Pennsylvania Human Relations Act ("PHRA") provides for the right to a jury trial. *See Wertz,* 741 A.2d at 1273. Specifically, the following PHRA provision was at issue:

If the court finds the respondent has engaged in such discriminatory practices charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate. . . .

*Id.* at 1274 (quoting 43 P.S. § 962(c)(3)). In arriving at our conclusion that the foregoing language does not provide for the right to a jury trial, we relied on three criteria. First, we put substantial emphasis on the fact that the PHRA was silent regarding the right to a jury trial. *See id.* As we explained, "the General Assembly is well aware of its ability to grant a jury trial in its legislative pronouncements," and therefore, "we can presume that the General Assembly's express granting of trial by jury in some enactments means that it did not intend to permit for a jury trial under the PHRA." *Id.; cf. Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 748 (1998) (the General Assembly's use of specific language to permit punitive damages in numerous statutes reflects intention to allow such damages only when expressly provided). Second, we focused on the General Assembly's use of the term "court" in the PHRA, which we stated was "strong evidence that under the PHRA, it is a tribunal, rather than a jury, that is to make findings and provide relief." *Wertz,* 741 A.2d at 1274. Finally, we considered it important to our statutory analysis that there was nothing in the legislative history of the PHRA to support the notion that the General Assembly intended for the PHRA to contain a right to a jury trial. *See id.* at 1274–75.

Significantly, in section 8371, as in the PHRA, the General Assembly is silent regarding the right to a jury trial. *See id.* at 1274. In addition, the legislature chose to use the term "court" in section 8371, rather than "jury." *See id.*

Finally, there is no legislative history supporting the position that a section 8371 plaintiff is entitled to a jury trial. *See id.* at 1274–75. Accordingly, the very factors that led us to conclude that there was no right to a jury trial in *Wertz* are also present in this case. Thus, applying our analysis in *Wertz,* we conclude that section 8371, like the PHRA, does not provide for the right to a jury trial.[2] *Accord Younis Bros. & Co. v. Cigna Worldwide Ins. Co.,* 882 F.Supp. 1468, 1474 (E.D.Pa.1994); *Thomson v. Prudential Prop. & Cas. Ins. Co.,* No. 91–4073, 1992 WL 210088 at *3, 1992 U.S. Dist. LEXIS 12627, at *7–*8 (E.D.Pa. Aug. 24, 1992); *Godak v. Nationwide Ins. Co.,* 35 Pa. D. & C. 4th 481, 484 (Com.Pl.1997); *see also Fahy v. Nationwide Mut. Fire Ins. Co.,* 885 F.Supp. 678, 680–81 (M.D.Pa.1995) (expressing agreement with reasoning of *Younis Bros.* and *Thomson* ).[3]

■ Mishoe and Hamer argue, however, that this case is different from *Wertz* because, unlike the PHRA, section 8371 is subject to the Judicial Code's definitions section, which states that "court" "*[i]ncludes* any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." 42 Pa.C.S. § 102 (emphasis added). According to Mishoe and Hamer, this inclusive definition is broad enough to include juries because the word "includes" is open-ended, suggesting that meanings other than those specified are also valid. Additionally, they contend that it is illogical to read "court" to mean only "judge" because the Judicial Code separately defines "court" and "judge" and thus

**2.** As the statute is clear, we will not resort to the other statutory construction factors delineated by the General Assembly in 1 Pa.C.S. § 1921(c). *See* 1 Pa.C.S. § 1921(b) (if a statute is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit").

**3.** We note our disapproval of certain dicta contained in a footnote in the Superior Court's decision in *The Birth Center v. The St. Paul Companies,* 727 A.2d 1144, 1160 n. 10 (Pa.Super.1999), *aff'd on other grounds,* 567 Pa. 386, 787 A.2d 376 (2001), where the court stated that section 8371 does provide for the right to a jury trial. Likewise, we note our disapproval of *Kehrer v. Nationwide Ins. Co.,* 25 Pa. D. & C. 4th 1 (Com. Pl. Lancaster 1995), which reaches the same conclusion.

assigns independent significance to each term.[4] *See* 1 Pa.C.S. § 1921(a) (statutes must be construed such that every word is given effect). We disagree.

Although Mishoe and Hamer correctly note that the definition of "court" does not specifically *exclude* other meanings of that term, their conclusion that the definition therefore necessarily *includes* "jury" is flawed. As an initial matter, Mishoe and Hamer fail to recognize that the word "includes" can signal the beginning of a complete list. *See* AMERICAN HERITAGE DICTIONARY 665 (1969) (explaining that "includes," like "comprise," can imply that all of the components are stated). Moreover, the fact that the definition of "court" is dedicated to a discussion of the power of judges strongly suggests that "court" is a concept that is meant to be limited to judges. *See Ken R. ex rel. C.R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267, 1270 (1996) ("the inclusion of a specific matter in a statute implies the exclusion of other matters"); *see also Younis Bros.*, 882 F.Supp. at 1473 (the Judicial Code's definitional section "does not refer to the jury in its definition of 'court' "); *Godak*, 35 Pa. D. & C. 4th at 483–84 (definition of "court" shows that it means "judge" for section 8371 purposes). Indeed, the definition plainly states that "court" means *"judges . . . who are authorized . . . to exercise the powers of the court in the name of the court,"* 42 Pa.C.S. § 102 (emphases added), indicating that when a judge acts "in the name of the court," she *is* the "court" for purposes of the Judicial Code. Furthermore, it is difficult to find merit in Mishoe and Hamer's assertion that "court" includes "jury" when numerous other statutes within the Judicial Code plainly treat the two concepts as independent from one another.[5] *See Younis Bros.*,

**4.** For purposes of the Judicial Code, "judge" "[i]ncludes a justice of the Supreme Court. Except with respect to the power to select a president or administrative judge, to appoint and remove the administrative staff of the court and to adopt rules of court and other similar matters, the term includes a senior judge." 42 Pa.C.S. § 102.

**5.** *See, e.g.,* 42 Pa.C.S. § 5327(c) ("The court, not jury, shall determine the law of any governmental unit outside this Commonwealth."); 42 Pa.C.S. § 6107(c) ("The construction of such ordinances shall be made by the court and not by the jury and shall be reviewable."); 42 Pa.C.S. § 6111(c) ("It shall be competent for experts in formulating their

882 F.Supp. at 1474 (citing statutes distinguishing "court" from "jury" and concluding that "the [Pennsylvania] legislature specifically includes the term 'jury' in a statute when it wants the jury to serve as a decision maker").[6] Finally, we see nothing wrong with construing "court" and "judge" as essentially synonymous for purposes of section 8371, particularly when statutes throughout the Judicial Code use them as equivalents, with the only variation being the context in which each term is used.[7] Therefore, we reject Mishoe and Hamer's

opinions to the court and jury to place the genuine and disputed signatures or writing in juxtaposition...."); 42 Pa.C.S. § 7302(d)(2) ("a court in reviewing an arbitration award ... shall ... modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."); 42 Pa.C.S. § 7502(c) ("In any action where the affiant is found by the court to have knowingly filed a false affidavit, such conduct shall constitute just cause for the court to instruct the jury that it may award exemplary damages in relation to such conduct."); 42 Pa.C.S. § 8342 ("In all civil actions for libel, the plea of justification shall be accepted ... when it is pleaded, and proved to the satisfaction of the jury, under the direction of the court as in other cases...."); 42 Pa.C.S. § 9711(a)(1) ("After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment."). It is also worth noting that other definitions within the definitions section of the Judicial Code show that "court" means "judge" for purposes of the Code. *See, e.g.,* 42 Pa.C.S. § 102 ("tribunal" defined as "[a] *court,* district justice *or other judicial officer* vested with the power to enter an order...." (emphasis added)).

6. Interestingly, the rationale employed in *Younis Bros.* was explicitly adopted by the Commonwealth Court in its decision in *Wertz,* which this Court later affirmed. *See Wertz v. Chapman Township,* 709 A.2d 428, 432 (Pa.Commw.1998), *aff'd,* 559 Pa. 630, 741 A.2d 1272 (1999). In *Younis Bros.,* the court interpreted section 8371—the very section at issue here—as not providing for a jury trial. *See Younis Bros.,* 882 F.Supp. at 1474. Mishoe and Hamer fail to explain how the reasoning in *Younis Bros.* provided a sufficient basis for the Commonwealth Court in *Wertz* to hold that no right to a jury trial exists under the PHRA, yet somehow fails to provide a sufficient basis to hold that no right to a jury trial exists under section 8371 itself.

7. The term "court" is generally used in the Code on occasions where it would be inappropriate for the General Assembly to use the term "judge," as in such instances the judicial action contemplated is only possible "in the name of the court." 42 Pa.C.S. § 102; *see* examples cited *supra* note 5. On the other hand, the term "judge" is typically used in references to judges in an individual sense. *See, e.g.,* 42 Pa.C.S.

claim that the term "court" in section 8371 encompasses juries in addition to judges and tribunals.

■ Mishoe and Hamer also contend that section 8371 affords the right to a jury trial because it permits an award of punitive damages, which is traditionally within the domain of the jury. We disagree. Although juries have traditionally awarded punitive damages, we cannot rest the right to a jury trial on tradition alone where the General Assembly has not referenced that tradition in section 8371 and the section's legislative history in no way signals an intent to adhere to such tradition.[8] *See Wertz*, 741 A.2d at 1274. As we explained in *Wertz*, if the General Assembly wanted to provide jury trials for section 8371 claims, it could have simply said so in that section. *See id.* (citing statutes conferring right to jury trial); *Younis Bros.*, 882 F.Supp. at 1474 ("the [Pennsylvania] legislature specifically includes the term 'jury' in a

§ 325 (providing for seniority of "judges"); 42 Pa.C.S. § 911 (providing for the number of "judges" to be allotted to each judicial district). Thus, it is rather obvious that separate terminology is necessary, as it would be impossible for the legislature to accurately use the term "court" in reference to a judge in the latter scenario.

8. We also note that if we were to accept Mishoe and Hamer's "tradition" argument, we would be compelled to construe section 8371 as requiring some remedies to be awarded by a judge and others by a jury. This is because the first and third remedies provided by the statute, interest and costs and fees, *see* 42 Pa.C.S. § 8371(1) and (3), are traditionally awarded by a judge, while the second remedy, punitive damages, *see* 42 Pa.C.S. § 8371(2), is traditionally awarded by a jury. Thus, Mishoe and Hamer's approach would create two simultaneous meanings for the term "court" within section 8371. Specifically, "court" would mean "judge" regarding the first and third remedies, but "court" would mean "jury" with regard to the second remedy. There is nothing in the text or history of section 8371, however, that supports the notion that the legislature intended to use "court" as some sort of verbal chameleon. *Cf. Younis Bros.*, 882 F.Supp. at 1473 n. 12 ("were I to adopt [the argument that section 8371 contains a right to a jury trial], I would in fact have to conclude that section 8371 does not reserve to the judge any role under the statute as it fails to specifically define the role of the judge as distinguished from that of the jury."). In addition, Mishoe and Hamer's approach ignores the overall context of section 8371, which presupposes a single meaning for the term "court." *See O'Rourke*, 778 A.2d at 1201 ("we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear").

statute when it wants the jury to serve as a decision maker"). As the legislature did not in any way indicate its intent to provide for the right, we will not engage in speculation as to its conceivable intentions. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Furthermore, it is important to note that although juries have traditionally awarded punitive damages, the remedy is not within the exclusive province of the jury, as judges regularly award punitive damages where the right to a jury trial has been waived in favor of a bench trial. *See, e.g., SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 703–05 (1991) (bench trial with award of punitive damages); *Trotman v. Mecchella*, 421 Pa.Super. 620, 618 A.2d 982, 983–85 (1992) (same). Additionally, even where juries award punitive damages, we sanction judicial control over such awards by way of remittitur. *See G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127, 1131 (1998). Therefore, the traditional role juries play in awarding punitive damages is not sufficient to overcome the presumption that, absent specific conferral, the right to a jury trial does not exist.[9] *See Wertz*, 741 A.2d at 1274.

**9.** We summarily dismiss Mishoe and Hamer's claim that we should construe section 8371 as providing for the right to a jury trial to maintain consistency between state and federal forums, *see, e.g., Fahy*, 885 F.Supp. at 680–81 (Seventh Amendment to the United States Constitution guarantees jury trial in section 8371 cases), as we rejected the same argument in *Wertz* because forum variation is simply a result of "the peculiarities of our system of federalism." *Wertz*, 741 A.2d at 1279 n. 5. Furthermore, we reject Mishoe and Hamer's argument that we should recognize section 8371 as containing an implicit jury trial right similar to that implied in Pennsylvania's wrongful death and survival statutes, *see* 42 Pa.C.S. §§ 8301 to 8302, as those statutes simply preserve a deceased person's underlying cause of action for the benefit of the person's estate. *See In re Pozzuolo's Estate*, 433 Pa. 185, 249 A.2d 540, 544 (1969) (survival action is "an action which [the] decedent himself could have instituted had he survived"). Finally, we dismiss Mishoe and Hamer's assertion that the public interest is best served by affording the right to a jury trial in section 8371 cases, *see* 1 Pa.C.S. § 1922(5), as Mishoe and Hamer simply emphasize the importance of jury trials without explaining how trial judges are incapable of serving the public interest in redressing bad faith. *See Wertz*, 741 A.2d at 1279 ("While we are aware of the great value placed on a trial by a jury of one's peers in our Commonwealth, we are confident that the

 Having concluded that Mishoe and Hamer have no statutory right to a jury trial under section 8371, we must address their alternative argument that the Pennsylvania Constitution guarantees a jury trial for claims arising under section 8371. The applicable constitutional provision provides, in relevant part, that "[t]rial by jury shall be as heretofore, and the right thereof remain inviolate." [10] Pa. Const. art. 1, § 6. In construing this section, this Court has consistently held that the right to a jury trial as preserved by our Constitution extends to all causes of action that existed at the time the Constitution was adopted. *See Wertz,* 741 A.2d at 1275–76; *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa.523, 610 A.2d 36, 41 (1992) (right to jury trial for *in rem* forfeiture cases preserved by Pennsylvania Constitution where such cases heard by juries at time of adoption of Constitution); *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59, 64–65 (1961) (right to jury trial for obscenity charge preserved by Pennsylvania Constitution where such cases heard by juries at time of adoption of Constitution); *Appeal of Watson,* 377 Pa. 495, 105 A.2d 576, 577–78 (1954) (no right to jury trial on issue of tenure for teacher fired for "mental derangement" where such cases not heard by juries at time of adoption of Constitution); *Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Bd.,* 292 Pa. 127, 140 A. 858, 859–60 (1928) (no right to jury trial on issue of revocation of liquor license where such cases not heard by juries at time of adoption of Constitution). As this Court explained in 1866:

judges of our Commonwealth are equally as capable as jurors to justly resolve claims of discrimination brought under the PHRA.").

10. This provision has remained essentially unchanged since the Constitution of 1790 was adopted. *See Wertz,* 741 A.2d at 1275–76. The Constitution of 1776 generally provided that, in civil suits, "the parties have a right to trial by jury, which ought to be held sacred," Pa. Const. (1776) ch. 1, cl. 11, and that "[t]rials shall be by jury as heretofore," *id.,* ch. 2, § 25. The Constitution of 1790 provided "[t]hat trial by jury shall be as heretofore, and the right thereof remain inviolate." Pa. Const. (1790) art. 9, § 6. The wording of this provision has not changed since 1790, although in 1874 it was moved to a different section within the Constitution. *See* Pa. Const. (1838) art. 9, § 6; Pa. Const. (1874) art. 1, § 6; Pa. Const. (1968) art. 1, § 6.

The great purpose of the constitution in providing that "trial by jury shall be as heretofore, and the right[ ] thereof remain inviolate," was not to contract the power to furnish modes of civil procedure in courts of justice, but to secure the right of trial by jury in its accustomed form before rights of person or property shall be finally decided. Hence the right of trial as it then existed was secured, and the trial itself protected from innovations which might destroy its utility and its security as a palladium of the liberties of the citizen. But beyond this point there is no limitation upon legislative power in constructing modes of redress for civil wrongs, and regulating their provisions.

*Haines v. Levin,* 51 Pa. 412, 414 (Pa.1866). Accordingly, our inquiry is whether the bad faith cause of action today residing in section 8371 existed at the time the Pennsylvania Constitution was adopted.

In 1981, this Court considered whether there was a common law tort cause of action for bad faith on the part of an insurer and concluded that there was not. *See generally D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981). In what has been described as a "delayed response" to that decision, *see Polselli v. Nationwide Mut. Fire Ins. Co.,* 126 F.3d 524, 529 (3d Cir.1997), the Pennsylvania legislature in 1990 enacted section 8371. *See Nelson v. State Farm Mut. Auto. Ins. Co.,* 988 F.Supp. 527, 531–32 (E.D.Pa.1997) (section 8371 prompted by outcome in *D'Ambrosio* ). As such, it is clear that the bad faith cause of action that is codified in section 8371 did not exist prior to the enactment of that statute and certainly did not exist at the time the Pennsylvania Constitution was adopted. Accordingly, the Pennsylvania Constitution does not provide for the right to a jury trial for bad faith claims arising under section 8371. *Cf. Wertz,* 741 A.2d at 1277; *Premier Cereal & Beverage,* 140 A. at 859–60.

Mishoe and Hamer argue to the contrary that section 8371 merely codified the common law right of an insured to enforce an insurer's contractual obligations and that the section simply adds remedies for an insurer's breach of the contractual duty

of good faith. We disagree. Even assuming *arguendo* that at least some aspect of section 8371 claims sound in contract,[11] common law bad faith contract claims against insurers are of a relatively recent vintage and thus did not exist at the time the Constitution was adopted. *See Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223, 227 (1957) (whether common law rule exists regarding bad faith "has never before been passed upon by this [C]ourt"); *see also Birth Ctr. v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376, 390 (2001) (Nigro, J., concurring) (citing *Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952), as genesis of contract action for bad faith); *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96, 101 (1995) (Cappy, J., concurring) ("for almost four decades, we have recognized a common law action for bad faith sounding in contract"). Indeed, the authorities offered by Mishoe and Hamer that date to 1790 do not support the notion that bad faith claims were recognized at that time. Rather, they merely stand for the general proposition that juries were empaneled in trials regarding insurance policies in 1790. *See, e.g., Richette v. Stewart*, 1 Dall. 317, 1 L.Ed. 154 (1788) (insurance dispute tried before jury; no reference to bad faith in Court's opinion). We will not, however, analogize such generic insurance contract cases to section 8371 cases for purposes of establishing historic precedent for the constitutional right to a jury trial. *See Wertz*, 741 A.2d at 1278–79 (rejecting "analogy" of PHRA discrimination claim to more general personal injury claim).

**11.** Proper characterization of section 8371 claims is a matter that is unsettled. *See Birth Ctr. v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376, 389 (2001) (noting that characterization of claim is irrelevant to outcome of case); *Birth Ctr.*, 787 A.2d at 390–91 (Nigro, J., concurring) (claims under section 8371 are tort claims; separate bad faith cause of action exists at common law that is rooted in contract); *Birth Ctr.*, 787 A.2d at 391–94 (Zappala, J., dissenting) (bad faith claims are based in tort rather than contract); *see also Woody v. State Farm Fire & Cas. Co.*, 965 F.Supp. 691, 695 (E.D.Pa.1997) (claims arising under section 8371 can be characterized as either tort or contract claims); *Nelson*, 988 F.Supp. at 534 (rejecting *Woody;* claims arising under section 8371 sound in tort rather than contract). As this question is neither raised in this appeal nor essential to its disposition, we do not address it.

In conclusion, we hold that neither 42 Pa.C.S. § 8371 itself nor the Pennsylvania Constitution provides for the right to a jury trial for bad faith claims brought under section 8371. Accordingly, the Superior Court was correct in affirming the orders of the Lebanon County and Blair County trial courts rejecting the jury demands of Appellants Edward Mishoe and Nancy L. Hamer.

The order of the Superior Court is affirmed.

Former Chief Justice FLAHERTY and former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice NEWMAN joins.

Justice, CASTILLE, concurring.

I join the Majority Opinion. I write separately only to note that I was the lone dissenter to our decision in *Wertz v. Chapman Township,* 559 Pa. 630, 741 A.2d 1272 (1999). I did not agree with the approach or conclusion in *Wertz,* as to both the question of statutory construction and the constitutional question, and I continue to believe what I expressed in dissent. I recognize that the insurance bad faith statute here, 42 Pa.C.S. § 8371, is not the same statute as was at issue in *Wertz* and, thus, this case is not strictly controlled by *stare decisis.* Nevertheless, as the Majority accurately notes, the statutes are remarkably similar for purposes of the statutory interpretation issue presently facing the Court. Op. at 1156 ("the very factors that led us to conclude that there was no right to a jury trial in *Wertz* are also present in this case"). This is so much the case that, after careful consideration, I am convinced that there is an insufficient distinction between the two as to warrant distinction of, or departure from, *Wertz.* In addition, the approach to the constitutional question in *Wertz* was so very narrow, *see Wertz,* 741 A.2d at 1280–81 (Castille,

J., dissenting), that fidelity to the decision necessarily requires rejection of the constitutional claim raised here.

Returning to the question of statutory construction, I believe that declining to follow *Wertz* here would work a greater mischief than attempting to distinguish it. In this regard, I note that the *Wertz* opinion itself recognized that, if the statutory construction approach adopted there was a mistaken assessment of legislative intent, the General Assembly is in a position to remedy the matter:

> Based upon the legislature's silence on the issue of the availability of a jury trial, together with the affirmative use of the term "court," and the lack of any legislative history to the contrary, we conclude that the General Assembly did not intend for a plaintiff to have a right to trial by jury for claims under the PHRA [Pennsylvania Human Relations Act]. Of course, we recognize the difficulty in ascertaining the General Assembly's intent where the statute provides no express answer. However, we are secure in the knowledge that if we are mistaken as to the legislature's intent, the General Assembly may simply amend the PHRA to realize any heretofore unstated legal right that it contemplated.

741 A.2d at 1275. This observation concerning the PHRA is no less true of the statute *sub judice.* If this Court has misapprehended legislative intent, the General Assembly may cure the matter.

Finally, in this instance at least, I am satisfied that my disagreement *ab initio* with the precedent at issue is an insufficient ground upon which to depart from it. Although I ultimately did not agree with the *Wertz* analysis of the statutory construction issue, I deemed that issue to be a close one, upon which reasonable minds might disagree. Indeed, the bulk of my dissent in *Wertz* was devoted to the state constitutional implications of the majority decision. Whether *Wertz* was right or wrong on the statutory construction question, I think it is important that our approach to these matters be consistent. Accordingly, and because I believe that the Majority Opinion carefully and faithfully applies the teaching of *Wertz* and, in so doing, provides both reinforcement and

further guidance as to the approach lower courts should follow when faced with similar questions under other statutes, I tender my joinder.

Chief Justice, CAPPY, dissenting.

The majority concludes that there is no statutory right for a plaintiff to obtain a trial by jury in an action against an insurer for bad faith brought pursuant to 42 Pa.C.S. § 8371. In reaching its conclusion, the majority errs in three fundamental and far-reaching respects.

First, the majority mistakenly believes that our decision in *Wertz v. Chapman Township*, 559 Pa. 630, 741 A.2d 1272 (1999), in which we determined that there was no right to a jury trial in an action brought pursuant to the Pennsylvania Human Relations Act, is dispositive with respect to section 8371 and gives that decision a breadth and effect that was not intended, is not required and will be problematic in the future. Strict application of *Wertz* to every statutorily-created cause of action will not only deny the unique nature of the various statutes enacted by the Legislature, but it will severely limit our court's ability in cases hereafter to properly discern the intent of the Legislature regarding the statutory right to a trial by jury.

Second, and related thereto, the majority's analysis fails to give full effect to the construct set forth in the Statutory Construction Act.[1] Neglecting to follow the step-by-step dictates of that Act in this appeal leads the majority to substitute its view for that of the Legislature and wrongly conclude that there is no right to a jury trial in a claim of bad faith.

Finally, and most importantly, the conclusion reached by the majority, that it is for a judge, and not a jury, to award punitive damages under section 8371, is sharply at odds with the intent of the Legislature. Simply stated, one hundred and fifty years of law establishes that the award of punitive damages is entrusted to a jury. The majority ignores this elephant in the room and instead, comes to the novel and

1. Statutory Construction Act of 1972 ("Statutory Construction Act"), 1 Pa.C.S. § 1501 *et seq.*

unprecedented conclusion that the Legislature intended for a judge to award punitive damages. Therefore, I dissent. I address each of these points of disagreement below.

In *Wertz*, our court employed a limited statutory construction analysis when faced with the issue of whether a plaintiff was afforded a right to a jury trial under the Pennsylvania Human Relations Act. 43 P.S. §§ 951–962.2. Our court first noted that the statute was silent as to whether or not a jury trial was available in an action brought under the statute and that the General Assembly was able to expressly provide for the right to a jury trial. *Wertz*, 741 A.2d at 1274. We opined that this lack of an express granting of the right to a jury trial worked as a presumption against the finding of legislative intent to create the right to a jury trial under the Act. Furthermore, we considered that the Legislature used the *undefined* term "court" with respect to who should determine discriminatory conduct and grant relief and concluded that this was evidence that it was for a judge to make these decisions. *Id.* We also noted the lack of legislative history regarding the statute. *Id.* at 1274–75. Ultimately, we concluded that, based upon the above-stated considerations, there existed no statutory right to a jury trial under the Pennsylvania Human Relations Act. *Id.* at 1275.[2]

The majority, by finding *Wertz* to be dispositive with respect to section 8371, misunderstands the import of that case. While the considerations utilized in *Wertz* were based upon the rules of statutory construction set forth in the Statutory Construction Act, they were a *truncated version* of the factors set forth in that Act. It was never the intent that the analysis used in *Wertz* be applied to all statutes or to broadly replace the rules of statutory construction, which must be utilized when interpreting a statutory provision.[3] By limiting itself to

2. Finding that there existed no cause of action for discrimination at the time the Pennsylvania Constitution was adopted, we also concluded that the Pennsylvania Constitution did not guarantee a plaintiff a right to a jury trial in an action brought under the Pennsylvania Human Relations Act. *Id.* at 1276–77.

3. 1 Pa.C.S. § 1901 ("In the construction of the statutes of this Commonwealth, the rules set forth in this chapter shall be observed, unless

the factors set forth in *Wertz,* the majority employs a "one-size fits all" approach that fails to take into account differences in statutes and unnecessarily limits the appropriate statutory construction analysis. Even more importantly, adherence to the abbreviated *Wertz* analysis will handcuff our court with respect to future questions regarding the Legislature's intent concerning a statutory right to a jury trial, and it virtually eliminates the finding of an implied right to a jury trial.

Contrary to the majority's approach, the full and proper framework in which to analyze the issue of a statutory right to a jury trial is set forth in the Statutory Construction Act. Proper application of the roadmap set forth in the rules of statutory construction leads to the conclusion that the Legislature intended for a right to a trial by jury in a claim brought under section 8371.

The polestar of statutory construction is to determine the intent of the Legislature. 1 Pa.C.S. § 1921(a)(court's sole objective in construing or interpreting a statute remains to "ascertain and effectuate the intention of the General Assembly"). The right to a jury trial may be expressly set forth in a statute, or it may be implied. *Commonwealth v. One 1984 Z-28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36, 38 (1992)(jury trials are not available in a proceeding created by statute unless the statute expressly or impliedly so provides or proceeding has a common law basis (citing *Murphy v. Cartex Corp.,* 377 Pa.Super. 181, 546 A.2d 1217, 1222 (1988))). In either case, to ascertain the intent of the Legislature, our court first considers the language of the statute itself. 1 Pa.C.S. § 1921(b)("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Section 8371 was enacted into law as part of the Act of February 7, 1990, P.L. 11, No. 6, § 3, effective July 1, 1990, as a general amendatory act to the Judicial Code. Section 8371 provides:

> the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly.").

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

It is apparent that section 8371 neither expressly provides for, nor prohibits, a jury trial in an action brought under this section. Thus, it becomes incumbent to consider whether the statute impliedly provides for a jury trial.

As noted above, the rules of statutory construction set forth that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Only if the words of the statute are found not to be explicit, i.e., to be unclear or ambiguous, should a reviewing court further engage in an attempt to ascertain the intent of the Legislature through use of the various tools provided in the Statutory Construction Act.[4] A term is not explicit, or is ambiguous, if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Cf. Murphy v. Duquesne University,* 565 Pa. 571, 777 A.2d 418, 430 (2001). Conversely, a term is clear and free from all ambiguity if it is

---

4. 1 Pa.C.S. § 1921(c)("When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, [listing various matters]."); *Ramich v. WCAB (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318 (2001)(only when the language of the statute is ambiguous does statutory construction become necessary); *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72, 74 (1989)("Only if a statute is unclear may a court embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the object to be attained, circumstances under which it was enacted and the mischief to be remedied.").

reasonably susceptible of only one construction and being capable of being understood in only one sense.

Section 8371 utilizes the term "court" to describe the body that determines whether an insurer acted in bad faith and with respect to possible actions to be taken if such a finding is made. Applying the above-stated concepts, it becomes clear that the term "court," *as used in this statute* is not explicit, but is ambiguous and is not reasonably capable of a single construction or being understood in only one sense.

Specifically, section 102 of the Judicial Code provides definitions for usage in the sections found in the Code, including section 8371. The definition ascribed by the Legislature to the term "court" in section 102 is broad and inclusive:

> "Court." Includes any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court.

42 Pa.C.S. § 102.

The Judicial Code also contains a distinct statutory definition for the term "judge":

> "Judge." Includes a justice of the Supreme Court. Except with respect to the power to select a president or administrative judge, to appoint and remove the administrative staff of the court and to adopt rules of court and other similar matters, the term includes a senior judge.

*Id.*

The above provisions make clear that the definition given by the Legislature to the term "court" begins by use of the nonexclusive verbiage, "[i]ncludes," which suggests that while including a judge or judges, more is contemplated by the definition. Moreover, the definition section of the Judicial Code contains separate and specific definitions for the words "court" and "judge." As defined, the two terms are not equivalent, and implies that "court" means something in addition to "judge." Finally, supporting the proposition that the term "court" is capable of more than a single construction is

that notably absent from the Judicial Code is a separate definition for the term "jury."

Further confirming the existence of an ambiguity is that in other statutes, the Legislature itself has considered the term "court" to encompass the concept of a jury and has expressly carved out the concept of jury from the meaning of the term "court." *See, e.g.,* 42 Pa.C.S. § 6336 ("Hearings under this chapter [of the Juvenile Act] shall be conducted by the *court without a jury....*" (emphasis supplied)); 23 Pa.C.S. § 1308(b)("The application for a marriage license shall be heard by a *judge of the court, without a jury,* in court or in chambers at the earliest possible time." (emphasis supplied)).

Additionally, case law supports more than one construction or understanding of the meaning of the term "court." As far back as the beginning of the last century, courts of this Commonwealth have not considered the term "court" to be exclusively coextensive with the term "judge." *See, e.g., Commonwealth ex. rel. The Attorney General v. Mathues,* 210 Pa. 372, 59 A. 961, 976 (1904)(trial court, relying on Anderson's Law Dictionary, determined that, "[t]he term 'court' may mean the 'judge' or 'judges' of the court, or the judge and the jury, according to the connection and the object of its use."); *The Birth Center v. St. Paul Companies,* 727 A.2d 1144, 1160 n. 10 (Pa.Super.1999) *aff'd* 567 Pa. 386, 787 A.2d 376 (2001)("court" used in a generic sense, "and presumes the assignment of duties to the judge and/or jury in the traditional manner of practice."); *Kehrer v. Nationwide Insurance Company,* 25 Pa. D. & C. 4th 1 (CCP Lancaster Co.1995)("court" has "institutional components of both judge and jury").

Finally, other authority similarly ascribes a more inclusive meaning to the term "court." The American Heritage Dictionary of the English Language (4th ed.2000) offers the definition of "court" as, "A person or body of persons whose task is to hear and submit a decision on cases at law." Significantly, even United States Supreme Court Justice Antonin Scalia, a strict textualist, finds that the term "court" can include both

judge and jury.[5] *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 356, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998)(Scalia, J. concurring)("[Court] has a broader meaning, which includes both judge and jury," (citing BLACK'S LAW DICTIONARY 318 (5th ed.1979)("A body organized to administer justice, and including both judge and jury."))).

Given the differing meanings ascribed to the term, one simply cannot reasonably say that the term "court," as contained in the Judicial Code, is free from *all* ambiguity and is subject to only one construction or understanding. 1 Pa.C.S. § 1921(b), (c)(emphasis supplied); *O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A.2d 1194, 1200 (2002).

Rather than acknowledge the ambiguity in the term "court" in this statute and then turn to the other tools of statutory construction set forth in section 1921(c) of the Statutory Construction Act to avoid the ambiguity, the majority commits a second fundamental error by refuting these other reasonable meanings ascribed to the term "court" and simply offering *its definition* of the term "court." [6] This approach fails to give effect to the Statutory Construction Act. At this juncture, the analysis should consist solely of the determination of whether or not the statute is ambiguous—not what differing interpretation is most persuasive. In sum, the majority foregoes additional tools used to discern the intent of the Legislature, comes to *its own conclusion* regarding who should hear a claim of bad faith, and in doing so, fails to determine the statute's meaning *as intended by the General Assembly*.

Having determined that the term "court" is not explicit, the next step is to turn to the considerations set forth in the Statutory Construction Act to be utilized when the terms of a statute are not clear and free from all ambiguity. 1 Pa.C.S.

**5.** *See* Antonin Scalia, A MATTER OF INTERPRETATION (Amy Gutmann ed., 1997).

**6.** Indeed, the majority's approach sharpens the point. The majority recognizes that the statute in defining the term "court" utilizes the definitional language "includes any one or more judges...." Maj. Opin. at 1156–57. The majority offers that the word " 'includes' *can* signal the beginning of a complete list." (emphasis applied). Maj. Opin. at 1157. Yet, this only supports the conclusion that the term is ambiguous.

§ 1921(c).[7,8] Employment of these tools firmly establishes that the Legislature intended that there be a jury trial available under section 8371.

The occasion and necessity for the statute, the mischief to be remedied, and the object to be obtained are all matters to be considered to ascertain the intent of the General Assembly. 1 Pa.C.S. § 1921(c)(1), (3), (4). By failing to take into account these considerations, the majority commits its third fundamental error.

When it enacted section 8371, the Legislature provided the primary remedy of punitive damages to punish insurers that engaged in bad faith. Punitive damages are a legal remedy and have traditionally been awarded by juries in courts of law. *Curtis v. Loether*, 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). As stated by the United States Supreme Court in *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 15, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), "[u]nder the traditional common-law approach, the amount of punitive damages is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial

**7.** Statutory construction considerations include:
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be obtained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
 1 Pa.C.S. § 1921(c)(1)-(8).

**8.** The circumstances under which a statute was enacted and legislative history are sometimes used to ascertain the intent of the General Assembly. 1 Pa.C.S. § 1921(c)(2), (7). Yet, the parties have not offered, and I have not found, any legislative history that would shed light on the availability of a jury trial in an action brought pursuant to section 8371 or evidence of the circumstances surrounding the enactment of section 8371. Therefore, the absence of relevant background as to the passing of section 8371 fails to advance the analysis. Moreover, there is a lack of former law and legislative and administrative interpretations of section 8371. 1 Pa.C.S. § 1921(c)(5), (8). Thus, these factors do not aid in the determination of the issue before us.

and appellate courts to insure that it is reasonable." This view was recently echoed by the majority of the Court in *Cooper Industries v. Leatherman Tool Group*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). As expressed by Justice Stevens, writing for the majority, " 'It is the peculiar function of the jury' to set the amount of punitive damages...." *Id.* at 437 n. 11, 121 S.Ct. 1678 (quoting *Barry v. Edmunds*, 116 U.S. 550, 565, 6 S.Ct. 501, 29 L.Ed. 729 (1886)). Justice Ginsberg in her dissent acknowledged the same: "At common law, as our longstanding decisions reiterate, the task of determining the amount of punitive damages 'has [always been] left to the discretion of the jury.' " *Id.*, at 445, 121 S.Ct. 1678 (quoting *Day v. Woodworth*, 54 U.S. (13 How.) 363–371, 371, 14 L.Ed. 181, 185 (1851)). Thus, over one hundred and fifty years of legal tradition establish that punitive damages are to be awarded by a jury.

The tradition of the award of punitive damages being within the province of the jury is unmistakable evidence that the Legislature intended to permit a jury to determine bad faith and to award punitive damages in an action brought pursuant to section 8371. *See* 1 Pa.C.S. § 1921(c)(5)(General Assembly presumed to know the existing law when enacting a statute). Strikingly, the majority fails to offer a single case in which the award of punitive damages was for a judge in the first instance. The majority's assertion that a judge may award punitive damages if a jury trial is waived is a weak reed by which to refute this overwhelming evidence of the Legislature's intent. Of course, a party may waive its right to a jury trial, but this does not logically support the proposition that there is no right to a jury trial in the first instance—in fact, it suggests just the opposite. Yet, even assuming that the award of punitive damages is in some unique instance awarded by a judge rather than a jury, the clear implication of this tradition of a jury determining punitive damages in attempting to ascertain the intent of the General Assembly simply cannot and should not be ignored. It is this departure from long-standing law that exposes most clearly the flaw in the majori-

ty's approach and leads to frustration of the intent of the Legislature.[9]

In conclusion, the majority errs in limiting its analysis regarding section 8371 to those factors expressed in *Wertz*. Rather, it is full utilization of the framework set forth in the Statutory Construction Act that is appropriate. Employing this construct, it becomes evident that the term "court" is not explicit and unambiguous. Applying the tools of statutory construction, and recognizing the longstanding legal tradition of a jury awarding punitive damages, it becomes an inescapable conclusion that the Legislature intended that a jury be permitted to determine the issue of bad faith and punitive damages.[10]

Thus, I would reverse the judgment of the Superior Court and remand the matter for further proceedings.

Justice NEWMAN joins this dissenting opinion.

9. Finally, while the parties have weighed in on the significance of the General Assembly's providing for the award of punitive damages, as it relates to the right to a jury trial, neither party has in a meaningful fashion addressed the effect of section 8371's provision for interest and/or court costs and attorney fees against the insurer. Consistent with the recognition that the term "court" as used in section 8371 is capable of meaning judge or judge and jury, and because a judge has traditionally awarded interest, costs, and fees, *Bata v. Central–Penn National Bank of Philadelphia*, 448 Pa. 355, 293 A.2d 343, 356 n. 29 (1972), for purposes of section 8371, I would find that the Legislature intended for a judge to determine interest, court costs, and attorney fees. *The Birth Center*, 727 A.2d at 1160 n. 10; *Kehrer*, 25 Pa.D. & C. 4th at 6. Construing the statute to provide for a jury trial with respect to an award of punitive damages and to provide for a judge to award interest, costs and fees is not inconsistent, but simply an unremarkable recognition of the legal bodies that historically made such awards.

10. As I would conclude that there exists a statutory right to a trial by jury in a proceeding brought pursuant to section 8371, I do not reach the issue of whether there is such a right pursuant to the Pennsylvania Constitution.