[J-108-2016] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| ALISHA L. FORD, | : | No. 13 WAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered December 30, 2015 at |
| | : | No. 1800 WDA 2014, affirming the |
| v. | : | Order of the Court of Common Pleas of |
| | : | Westmoreland County entered October |
| | : | 17, 2014 at No. 3733 of 2013 |
| AMERICAN STATES INSURANCE | : | |
| COMPANY, | : | ARGUED:  November 2, 2016 |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE DONOHUE** **DECIDED:  FEBRUARY 22, 2017**

In Section 1731 of the Motor Vehicle Financial Responsibility Law (MVFRL), the General Assembly did not merely instruct insurers to have insureds sign a form rejecting uninsured and underinsured motorist coverage.  Instead, the General Assembly drafted the precise language to be used in those rejection forms, directed insurers to have insureds sign those particular forms, and provided that any form that fails to "specifically comply" with this requirement is void.  75 Pa.C.S. § 1731(c.1).  The learned Majority's decision to allow insurers to vary the General Assembly's prescribed language in these forms ignores, in my view, both the actual instructions in Section 1731 and the rules of statutory construction this Court must follow.  Accordingly, I must respectfully dissent.

The purpose of statutory interpretation is to ascertain and give effect to the General Assembly's intent. 1 Pa.C.S. § 1921(a).   If  the  language  of  a  statute

unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). In giving effect to the words of the legislature, "we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1155 (Pa. 2003) (citing *O'Rourke v. Department of Corr.,* 778 A.2d 1194, 1201 (Pa. 2001).

The intent of the General Assembly with respect to the rejection of uninsured and underinsured motorist coverages under Section 1731 is clear. Subsections (b) and (c) provide that the named insured may reject the coverages "by signing the following written rejection form," and then set forth the form that the insured must sign. Subsection (c), at issue here, reads as follows:

> **Underinsured motorist coverage.--**Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing **the following written rejection form**:
>
> #### REJECTION OF UNDERINSURED MOTORIST PROTECTION
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all

losses and damages.  I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured
_____

Date

75 Pa.C.S. § 1731(c) (emphasis added).  Subsection (c.1) then instructs the insurer to print these forms ("the rejection forms required by subsections (b) and (c)") on separate sheets of paper and have them signed and dated by the named insured.  75 Pa.C.S.A. § 1731(c.1).[1]  To emphasize the absolute need for strict conformity with these requirements, the General Assembly unambiguously provided that "[a]ny rejection form that does not specifically comply with this section is void."  *Id.*

---

[1]  Section 1731(c.1) provides:

> **(c.1) Form of waiver.--**Insurers shall print **the rejection forms required by subsections (b) and (c)** on separate sheets in prominent type and location.  The forms must be signed by the first named insured and dated to be valid.  The signatures on the forms may be witnessed by an insurance agent or broker.  **Any rejection form that does not specifically comply with this section is void.**  If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.  On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists.  Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(c) (emphasis added).

Rather than require specific compliance with the dictates of Section 1731, as subsection (c.1) plainly instructs, the Majority opts for a "close is good enough" approach. According to the Majority, an insurer need not have the insured sign the precise rejection forms the legislature set forth in subsections (b) and (c), as the insurer may use any form that adequately conveys the substance of the statutorily prescribed forms. Instead of demanding specific compliance, as the statute requires, the Majority is satisfied with substantial compliance. Nowhere in Section 1731 does the General Assembly give insurers any discretion to modify the language of the rejection forms in subsections (b) and (c), and this Court cannot, in an effort to capture the "spirit" of Section 1731, rewrite it to reach a preferred result. Here, the Majority has effectively rewritten Section 1731 to add language that the legislature did not include, namely that an insurer may make changes to the statutory language if the changes do not "modify coverage or inject ambiguity into the statutory form." Majority Op. at 14. This Court, however, has no such authority, as we may not add, by interpretation, language to a statute that the legislature did not see fit to include. *See, e.g.*, *Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014); *Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011). Section 1731 straightforwardly instructs the insurer to **print the rejection forms in subsections (b) and (c)** on separate sheets of paper and have the insured sign and date them, with no mention of alterations.

If the General Assembly had intended to permit changes (de minimis or otherwise) to the statutory language of the rejection forms in subsections (b) and (c), it was certainly capable of doing so. In fact, it **did** do so elsewhere in Section 1731. Subsection 1731(b.1) sets forth rejection language to be used when an insured waives

uninsured motorist coverage in rental or lease agreements.[2]  Subsection 1731(b.2) then provides:

> **(b.2) Rejection language change.--**The rejection language of subsection (b.1) may only be changed grammatically to reflect a difference in tense in the rental agreement or lease agreement.

75 Pa.C.S.A. § 1731(b.2).

The General Assembly did not include any "rejection language change" provisions in connection with subsections (b) or (c).  The obvious implication is that while an insurer may, in some circumstances, modify the rejection language of subsection (b.1), an insurer has no similar discretion with respect to the rejection language in subsections (b) and (c).  *See, e.g., Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016) ("[W]hen interpreting a statute we must listen attentively to what the statute says, but also to what it does not say."); *Kmonk-Sullivan v. State Farm Mut.*

---

[2] Subsection 1731(b.1) provides:

> **(b.1) Limitation of rejection.--**Uninsured motorist protection may be rejected for the driver and passengers for rental or lease vehicles which are not otherwise common carriers by motor vehicle, but such coverage may only be rejected if the rental or lease agreement is signed by the person renting or leasing the vehicle and contains the following rejection language:
>
> **REJECTION OF UNINSURED MOTORIST PROTECTION**
> I am rejecting uninsured motorist coverage under this rental or lease agreement, and any policy of insurance or self-insurance issued under this agreement, for myself and all other passengers of this vehicle. Uninsured coverage protects me and other passengers in this vehicle for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.

75 Pa.C.S.A. § 1731(b.1).

*Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (citing Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947)). The juxtaposition between the legislative grant of authority to insurers to make de minimis (grammatical) changes to the rejection language in subsection (b.1), while simultaneously requiring insurers to "specifically comply" with subsections (b) and (c), plainly demonstrates that the General Assembly intended for the rejection forms prepared under the latter subsections to contain the precise waiver language set forth therein.

The Majority's interpretation also conflicts with other rules of statutory interpretation. Whenever possible, this Court must construe statutory provisions to give effect to every word set forth therein. *See, e.g.*, *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) (citing 1 Pa.C.S. § 1921(a)). By permitting changes to the statutorily prescribed rejection forms, the Majority ignores the word "specifically" in the phrase "specifically comply" in subsection (c.1). The Majority has, essentially, decided that mere "compliance" with the overall spirit of Section 1731 is sufficient, so long as the lack of specific compliance is not substantial.

The legislature's use of the phrase "specifically comply" in subsection (c.1) was intentional. Subsection 1738(d) of the MVFRL, for instance, sets forth rejection forms for insureds to waive stacked limits on uninsured and underinsured motorist coverage, and Subsection 1738(e) then provides that any rejection form "that does not **comply** with this section is void." 75 Pa.C.S. § 1738(d)-(e) (emphasis added). As the Superior Court has rightly concluded, this crucial difference signals the need to apply more exacting scrutiny of the relevant forms in Section 1731 than to those in Section 1738. *Am. Int'l Ins. Co. v. Vaxmonsky*, 916 A.2d 1106, 1109 (Pa. Super. 2006).

Finally, while the Majority concedes that "it is ill-advised for an insurer" to make any changes to the statutorily prescribed forms, I conclude that the express language of Section 1731 prohibits any changes to the legislatively drafted forms set forth in subsections (b) and (c). As a practical matter, it is exceedingly easy **not** to make changes, as the required language may be copied and pasted, or re-typed and meticulously reviewed for deviations (inadvertent or otherwise). The Majority's contrary approach allows insurers to continue to tinker, ad nauseam, with the statutorily required language. As the Majority's review of multiple cases on this very issue demonstrates, refusal to adhere to the forms mandated by the statute will continue to require courts to oversee case after case in which parties contest whether particular modifications to the statutorily prescribed form were merely inconsequential or instead injected ambiguity into its language. This is the precise tinkering and judicial involvement that the legislature intended to avoid and I am at a loss to understand why this Court would inject uncertainty into this abundantly clear expression of legislative direction.

Because, in my view, the General Assembly did not intend this result, I dissent.

Justice Todd joins this dissenting opinion.