Dunkelberger v. Erie Ins. Co.

*Keld Wenge,* for plaintiffs.
*John A. Statler,* for defendant.

CHARLES, *J.,* January 24, 2011—This case is our first of what we expect will be many lawsuits that raise issues pertaining to underinsurance motorists (UIM) benefits and insurance bad faith.[6] As is often the case when contract and

_____

6. Historically, UIM claims were handled by arbitration panels. In 2005, Pennsylvania's Supreme Court decided what has been called the "*Koken* litigation" and declared that UIM claims can be litigated within the context of a lawsuit filed within common pleas courts. See, e.g. *Insurance Federation of Pennsylvania, Inc. vs. Pennsylvania Department of Insurance,* 889 A.2d 550 (Pa. 2005). Since *Koken,* many insurance companies began issuing policies that required litigation of UIM claims

bad faith claims intersect, discovery disputes have arisen. Specifically before us is the question of whether and for how long bad faith discovery should be delayed while the underlying UIM contract claim is litigated.

Insurance bad faith litigation is complicated and often involves an analysis of the insurance company's practices, procedures and subjective evaluation of a claim. In order for this analysis to be meaningful, a plaintiff in bad faith litigation must have access to insurance company documentation that is relevant to a bad faith inquiry.

On the other hand, most insurance companies will want to preserve the confidentiality of the practices and procedures that may distinguish that company from competitors within the highly competitive insurance marketplace. In addition, most insurance companies will not be eager to disclose their subjective analysis of an un-litigated claim due to the risk of revealing its litigation and settlement strategy.

In our opinion, the door to bad faith discovery should not be immediately opened to every plaintiff who pays a $100 filing fee and includes a bad faith count in his/her complaint. There must be some threshold that the plaintiff must overcome in order to earn a key that opens the door to bad faith discovery. Of necessity, the threshold that a plaintiff must overcome will have to be evaluated on a case-by-case basis. However, we hold today that the quest to measure the bad faith discovery threshold will not begin in Lebanon County until the underlying UIM claim has been fully litigated to verdict before a jury. Our reasons

in common pleas courts instead of via arbitration. Cases under these policies are now starting to make their way into court.

for this decision will follow.

## I. FACTS

On August 18, 2010, the plaintiff filed a civil complaint seeking UIM benefits and damages under Pennsylvania's Insurance Bad Faith statute. According to the complaint, plaintiffs John and Nicole Dunkelberger (hereafter "Dunkleberger") were involved in a motor vehicle accident on October 12, 2009. Dunkleberger alleges that the accident was caused by the negligence of Domingo Cruz (hereafter "Cruz"). They also claim that Cruz was an underinsured individual as that term is defined in Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

At the time of the accident, Dunkleberger was insured by defendant Erie Insurance Company (hereafter "Erie"). Dunkleberger averred that its insurance policy with Erie provided UIM coverage of $300,000 and that Erie should pay this amount due to serious and permanent neck, back and leg injuries suffered by both Mr. and Mrs. Dunkleberger as a result of the subject accident.

In its answer, Erie admitted that it insured Dunkleberger under a motor vehicle insurance policy that included $300,000 in UIM coverage. Erie further admitted that the accident of October 12, 2009 involved a driver by the name of Domingo Cruz. However, Erie claimed that it was without information sufficient to assess either the degree of Dunkleberger's injuries or the extent of Cruz' negligence. Erie admitted that Cruz was insured but stated that it was "without information sufficient... to admit or deny whether the insurance coverage under the defendant driver's policy was sufficient to cover

plaintiffs' damages sustained in the accident" (¶19 of Erie's answer).

On an unknown date, plaintiffs scheduled the deposition of David Harber, the adjuster for Erie who was handling Dunkleberger's UIM claim. Together with a notice of deposition, Dunkleberger served what it styled as a "Supplemental Request for Production of Documents," which included, among other things, "all records, documents, writings or other materials pertaining to the underwriting file used in the preparation and drafting of the plaintiffs' policy of motor vehicle insurance in effect at the time of the accident which is the subject of this suit." On December 9, 2010, Erie filed a motion for emergency protective order and stay. Erie's motion sought protection against Dunkleberger's bad faith discovery. Erie argued that bad faith discovery should be stayed pending resolution of the underlying UIM claim.

On December 17, 2010, Dunkleberger replied to Erie's motion for protective order and stay. Dunkleberger argued that its discovery request should not be delayed. Dunkleberger stated: "It would be unfair and inequitable to prevent plaintiffs from making reasonable inquiry, at this stage of the litigation, on all matters upon which the claim lies which were properly pled in their Complaint..." (¶23 of Dunkleberger's answer). In addition, Dunkleberger points out that Adjuster Harber possessed information that was relevant not only to the bad faith aspect of their claim but also to the underlying UIM claim.

Both sides have briefed the issue raised by Erie's motion for protective order. We have also had the benefit of oral argument. The issues raised by the parties are now before

us for disposition.

## II. DISCUSSION

To place the parties' dispute in its proper context, one must first understand some of the differences between a claim for UIM coverage and bad faith damages:

(1) The inquiry in a UIM claim concentrates on issues external to the insurance company while a bad faith claim also focuses on internal issues. A UIM inquiry typically focuses upon who caused an automobile accident and what injuries were suffered as a result thereof. On the other hand, a claim for bad faith damages focuses not just upon the issues of negligence, causation and damages, but also upon the insurance company's internal handling of the plaintiff's claim.

(2) A claim for UIM coverage is predicated upon and limited by a contract entered into by the parties. In contrast, a claim for bad faith damages arises entirely out of Pennsylvania's insurance bad faith statute. See 42 Pa.C.S.A. §8371.

(3) Under Pennsylvania law, the parties to a UIM dispute are entitled to a jury trial. On the other hand, there is no statutory or constitutional right to a jury trial on the issue of bad faith damages. See *Mishoe v. Erie Insurance Company*, 573 Pa. 267, 824 A.2d 1153 (Pa. 2003).

Because the issues pertaining to bad faith and UIM coverage are profoundly different, so too is the discovery that typically accompanies each type of claim. UIM discovery typically requests information such as police reports, witness statements, recorded interviews with the

insured, ambulance reports, hospital reports and medical records, while bad faith discovery typically also includes a request for an insurer's underwriting file, claims file and reserve analysis. Sometimes, a plaintiff in bad faith litigation also requests the insurance company's practices and procedures manual in an effort to learn whether the company acted in accordance with that policy.

There are many reasons why an insurance company may not want to disclose information relevant to a bad faith inquiry while the underlying UIM claim is pending. Among these reasons are the proprietary nature of the information and a desire to avoid being placed in a tactical disadvantage during litigation of the underlying UIM claim

The insurance marketplace is extremely competitive. The method by which applications are underwritten and claims are processed is what distinguishes one insurance company from another. Placing this information in the open stream of commerce via litigation discovery could profoundly affect an insurer's ability to compete.[1] In our opinion, information pertaining to an insurer's underwriting and claims handling policies is not information that should

---

1. The plaintiff points out that a confidentiality order can be entered in order to protect the privacy of an insurer's files. This is true, but only to a point. The world of insurance bad faith litigation is inhabited by only a few individuals who are both willing and qualified to serve as a plaintiff's bad faith expert. Of necessity, an insurer's files will have to be provided to the expert hired by the plaintiff. While a confidentiality agreement can prevent the expert from publishing this information in trade journals, etc., it is impossible to erase the knowledge gained by an expert via bad faith discovery. When a proper threshold to bad faith discovery has been hurdled, we view the phenomenon set forth in this footnote as a necessary byproduct of litigation. On the other hand, this byproduct should not be permitted to arise merely because the plaintiff pays a filing fee and says "give me your information."

be subject to routine discovery in a UIM case.

Just as important is the need for the insurance company to maintain the integrity of its own subjective analysis of a claim. The American system of civil jurisprudence is adversarial in nature. We have discovered through centuries of expErience that the truth can best be gleaned via a civilized but aggressively competitive system of inquiry that relies upon independent representation by counsel, self-interest, the crucible of cross-examination and a judiciary that is willing to establish and enforce ground rules. This system presupposes that the rules should apply equally to both sides.

Within the context of a UIM claim, if we were to allow the plaintiff's lawyer to obtain and examine the insurance company's claims file, that could give the plaintiff's attorney insight into the insurer's subjective thoughts and analysis with respect to witnesses, its own insured, and the value of the claim. The advantage this would give a plaintiff in UIM litigation cannot be understated. To use a sports analogy, suppose a major league batter is advised in advance whether the pitcher is going to be throwing a fast ball, a curve ball or a slider. This information will not automatically guarantee that the batter will hit a home run. However, advance knowledge of what pitch is going to be thrown will give the batter a strong competitive advantage that is not contemplated by the rules of baseball and will make solid contact between bat and ball far more likely. As we see it, this is the type of competitive advantage that a plaintiff would receive in UIM litigation if we were to require premature disclosure of an insurance company's internal files. Very little has been written on the subject of whether bad faith discovery should be limited or delayed

during the pendency of UIM litigation.[2] In 2009, Judge R. Stanton Wettick of the Allegheny Court of Common Pleas authored an opinion in the case of *Wutz v. Smith*, C.P. Allegheny Co., No. GD07-021766 (Sept. 9, 2009). Judge Wettick delayed bad faith discovery during the pendency of a UIM claim. Judge Wettick wrote:

> The insurance company should have the opportunity to show that discovery of certain information relevant to a bad faith claim will unduly prejudice the insurance company in its defense of the UIM claim...I agree with State Farm that it should not be required to furnish the information which plaintiff seeks until after the UIM claim is submitted to a jury.

We agree with Judge Wettick.[3]

---

2. The Superior Court had the opportunity to address this very issue in *Gunn v. Automobile Insurance Co. of Hartford, Connecticut*, 971 A.2d 505 (Pa. Super. 2009). However, the Superior Court chose not to exercise that opportunity. In *Gunn*, the Superior Court held the issue now before us to be interlocutory and non-appealable.

3. In other insurance dispute contexts, trial courts have routinely bifurcated bad faith claims from underlying claims seeking insurance indemnity. See, e.g. *Egger v. Gulf Insurance Company*, 2004 WL516687 (Phila. Co. 2004); *Rutkowski v. Allstate Insurance Company*, 69 Pa. D&C 4th 10 (2004); *Telecommunications Network Design v. Brethren Mutual Insurance Company*, 5 A.3d 331 (Pa. Super. 2010) (referencing the trial court's decision to bifurcate that was not appealed); *Roycroft v. Nationwide Insurance Company*, No. 92-SU-05621-01 (York Co. 1995); *Hellman v. Erie Insurance Exchange*, No. A.D.1997-269 (Franklin Co. 1998) ("In the instant matter, this court is convinced that it is preferable to grant Erie's Motion to Sever and for a Stay of Discovery. We base our decision on our concern for the prejudice the defendant would suffer if the entire contents of their files regarding this case were open and available for the plaintiff's inspection. Because this action involves a claim of bad faith against Erie, the advice of counsel for Erie regarding whether to deny the Hellman's claim, confidential internal memoranda, and other sensitive information are relevant to the action and therefore discoverable. Were this a simple breach of contract action, this information would be protected by the attorney-client privilege, but this is not the case here. plaintiffs' choice to pursue a bad faith claim against Erie now constraints this court to sever the causes of action and order a stay of discovery

Given all of the above, our decision to delay bad faith discovery is a relatively easy one. At this relatively early stage of the proceedings, we simply will not permit the plaintiff to obtain discovery that is relevant only to the bad faith claim.

More difficult is the question of when and how a plaintiff should request the keys to the door of bad faith discovery. With respect to when bad faith discovery can be commenced, we perceive several options. In outline form, those options are:

(1)  Summary Judgment -- Under this option, the parties would be required to litigate a motion for summary judgment regarding the bad faith claim once discovery ends with respect to the underlying UIM cause of action. If the plaintiff's bad faith claim survives summary judgment, then the door to bad faith discovery would be opened.

(2)  Bifurcation of the Claims -- Another option we would bifurcate the bad faith claim from the underlying UIM claim. The bad faith litigation would commence immediately after a verdict on the UIM claim and before the same court.

(3)  Sever the Claims -- Yet another option would be to sever the bad faith cause of action from the underlying UIM cause of action. With severance, the parties would fully litigate the UIM claim and receive a verdict from

---

pertaining to the bad faith portion of this case.") Similarly, courts from other jurisdictions have also recognized that discovery regarding bad faith claims should be set back until the underlying contract dispute is resolved. See, e.g. *U.S. Fire Insurance Company v. Millard*, 847 SW2d 668 (Tex.App. 1993).

a jury before even embarking upon the discovery phase of the bad faith case.

We will address the pros and cons of each procedural option.

### (1) *Summary Judgment*

Using summary judgment as the touchstone for triggering bad faith discovery does enable a trial court to conduct a threshold evaluation of facts that would support a plaintiff's claim of bad faith conduct on the part of an insurer. However, there are two reasons why we do not view summary judgment as the appropriate time to evaluate bad faith discovery.

Using summary judgment as the standard for triggering discovery creates a proverbial "chicken and egg" paradox for the plaintiff. On the one hand, we would be telling the plaintiff that he/she needs to survive summary judgment in order to get discovery. No doubt, the plaintiff will respond that he/she needs the very same discovery in order to survive summary judgment. We view this dilemma as insurmountable.

In addition, using a summary judgment standard requires analysis of bad faith before a jury's verdict on the underlying UIM claim. In most UIM bad faith claims, one of the plaintiff's key arguments will be that the insurance company engaged in a "low ball" settlement strategy. There is no possible way to determine if the insurance company's settlement offers were so far below the realm of reasonability as to trigger bad faith until a jury actually decides the value of the UIM claim.

For both of the above reasons, we reject summary

judgment as the time at which entitlement to UIM discovery should be measured.

(2) *Bifurcation*

Bifurcation does enable the parties and the court to know exactly how a jury evaluated plaintiff's UIM claim. Such knowledge allows everyone to view the plaintiffs' bad faith claim within its proper context. In addition, bifurcation carries with it the advantage of enabling a judge to immediately decide issues of bad faith while the facts of the underlying UIM claim are fresh in his/her memory. Several courts have cited this convenience as a reason for bifurcation rather than severance. In *Wutz*, supra Judge Wettick ordered the parties to immediately submit bad faith discovery as soon as the underlying UIM claim was submitted to the jury so that the bad faith trial could commence immediately following the jury's verdict. Similarly, the Superior Court in *Gunn v. Automobile Insurance of Hartford, Connecticut*, 971 A.2d 505 (Pa. Super. 2009), noted that the trial court had denied a motion for stay because it would be more convenient for the parties and the court for the same judge to try the bad faith claim immediately following conclusion of the UIM cause of action.

On the other hand, we perceive several problems that this process of bifurcation could engender. First, immediate litigation of a bifurcated bad faith claim could inhibit the parties and the court from addressing legitimate discovery issues that could arise in a bad faith context. For example, suppose a bad faith plaintiff wishes to access opinions of counsel that were provided to the insurance company during its processing of the underlying claim.

We perceive legitimate arguments that could be made both for and against such discovery, and a decision with respect thereto would necessarily be fact and claim-specific. We doubt that an issue of this magnitude could be properly and thoughtfully addressed in the short time that would occur between the UIM verdict and the prompt commencement of the bad faith claim. Second, bifurcation would deprive the insurance company of the right to legally challenge a plaintiff's bad faith claim via the procedural vehicle of summary judgment. We can perceive instances where an insurer would want to file a full or partial motion for summary judgment in order to defeat or limit the extent of a plaintiff's bad faith cause of action. Forcing the parties to immediately proceed from a UIM trial to a bad faith trial would deprive the insurance company of the right to make these arguments and would inhibit a court's ability to thoughtfully consider them.

### (3) *Severance*

There are numerous advantages to severance. Severance enables a bad faith court to know how the jury evaluated the plaintiff's UIM claim. Severance also permits the parties to fully pursue and/or object to discovery requests. Finally, the parties would enjoy the ability to challenge and/or limit the extent of the bad faith claim via summary judgment. In short, severance permits the parties to fully and thoughtfully address all aspects of a bad faith claim with full knowledge of how the jury determined the underlying UIM cause of action.

To be sure, there are disadvantages to severance. As noted by the court in *Gunn*, severance necessarily deprives a court of the ability to immediately resolve a bad faith

claim when the facts of the UIM claim are fresh in the court's memory. Similarly, the cost of litigation to both parties would undoubtedly increase with severance. An ultimate resolution of all of the parties' claims would also be delayed.

As noted above, we have rejected summary judgment as the procedural benchmark at which entitlement to bad faith discovery should be measured. Therefore, our choice is between severance and bifurcation. We certainly understand the arguments in favor of bifurcation and we respect the decisions of our counterparts in other counties which have opted for bifurcation. However, our decision is in favor of severance.

The stakes involved in bad faith litigation are almost always high. Given the potential amount in controversy, we believe that both parties to bad faith litigation should enjoy the full panoply of discovery and procedural rights that are afforded to litigants. We also believe that courts should be given the time to thoughtfully consider the arguments of both parties before complicated bad faith decisions are rendered.

Lebanon County is a four-judge jurisdiction. Because we are a small county, it is still relatively easy for us to insure that the same judge who presides over the UIM jury trial will be able to preside over the subsequent bad faith bench trial. While severance would necessitate a bad faith trial at a point in time where the underlying UIM claim will probably not be fresh in the judge's mind, we are confident that preservation of the trial judge's notes supplemented with transcripts and documentary evidence will be sufficient to afford the trial judge with enough information

and memory to properly adjudicate the bad faith claim. In addition, we conclude that the negative implications of delay and increased expense are outweighed by the advantages of time, procedural options and thoughtfulness that will only be possible with severance.

We hold today that when a UIM claim is accompanied in Lebanon County with a bad faith count, our standard practice will be to sever the bad faith count from the underlying UIM claim. This is not to say that parties cannot agree to handle a joint UIM/bad faith claim in a different manner. If the parties desire to use a different procedural paradigm, we will certainly accede to the parties' request. However, when there is a disagreement as to how and when to proceed with bad faith discovery, our decision today will require a severance of the two claims. The resulting effect of this severance will be to preclude any bad faith discovery until after the underlying UIM claim is fully litigated. An order to accomplish this decision will be entered this date.

## ORDER OF COURT

And now, January 24, 2011, after consideration of the parties' argument and in accordance with the attached opinion, the order of this court is as follows:

1. The motion of defendant Erie Insurance Company for an emergency protective order and stay is granted. The defendant shall not be responsible to respond to any discovery requests that exclusively pertain to issues relevant under Pennsylvania's insurance bad faith statute.

2. The cause of action set forth in plaintiff's complaint

seeking underinsurance motorist coverage damages is hereby severed from the cause of action set forth in plaintiff's complaint seeking bad faith damages. Discovery, motions practice, and trial regarding the bad faith component of plaintiff's litigation shall only commence after a final verdict with respect to plaintiff's underlying complaint seeking underinsurance motorist damages.