J-A18009-25

2025 PA Super 235

DINA DEVINCENZO-GAMBONE AND : IN THE SUPERIOR COURT OF
ANTHONY R. GAMBONE : PENNSYLVANIA
:
:
:
v. :
:
:
:
ERIE INSURANCE EXCHANGE :
: No. 1699 EDA 2024
Appellant :

Appeal from the Judgment Entered May 22, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2017-09856

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

OPINION BY OLSON, J.: **FILED OCTOBER 17, 2025**

Appellant, Erie Insurance Exchange, ("Erie Insurance") appeals from the May 22, 2024 judgment entered in the Court of Common Pleas of Montgomery County upon a non-jury verdict in favor of Dina Devincenzo-Gambone and Anthony R. Gambone (collectively, "Gambone") in the amount of $1,754,188.24. For the reasons set forth herein, we are constrained to vacate the May 22, 2024 judgment, as well as the January 10, 2024 verdict, in part, and remand this case for further proceedings in accordance with this decision.

On January 31, 2025, the trial court filed its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) and set forth, in detail, the factual and procedural history of this case. *See* Trial Court Opinion, 1/31/25, at 2-23. We adopt the recitation of the facts and procedural history contained therein and shall not repeat the same. In short, Dina Devincenzo-Gambone was involved in an automobile accident on February 24, 2004. At the time of

the accident, Gambone's automobile was insured by Erie Insurance. Gambone settled with the tortfeasor and subsequently filed, with the Court of Common Pleas of Philadelphia County, an under-insured motorist ("UIM") claim against Erie Insurance on August 3, 2011.[1] The parties thereafter agreed to submit the UIM claim to binding arbitration in the Court of Common Pleas of Montgomery County and, pursuant to the parties' agreement to seek arbitration, Gambone's case in the Court of Common Pleas of Philadelphia County was stayed. [2]

On August 31, 2016, the arbitrator found that the stacking provisions of Gambone's insurance policy applied and awarded Gambone $300,000.00.[3] Upon issuance of the arbitration decision and pursuant to the parties' agreement, Gambone dismissed the UIM claim against Erie Insurance in the Court of Common Pleas of Philadelphia County. On September 23, 2016, Erie Insurance tendered $250,000.00 to Gambone, which represented a portion of the arbitration award, and withheld payment of $50,000.00. On September

_____

[1] Gambone provided Erie Insurance with notice of the intent to seek UIM coverage under the insurance policy on May 2, 2006.

[2] The UIM claim involved both a claim for damages incurred by Dina Devincenzo-Gambone, as well as a claim for loss of consortium sustained by Anthony Gambone.

[3] "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Erie Insur. Exch. v. Backmeier*, 287 A.3d 931, 938 (Pa. Super. 2022) (citation omitted), *appeal denied*, 303 A.3d 421 (Pa. 2023).

29, 2016, Erie Insurance filed a petition to modify the arbitration award with the Court of Common Pleas of Montgomery County.

In response to Erie Insurance's petition, which contested the arbitration award, Gambone filed a complaint in the Court of Common Pleas of Montgomery County asserting, *inter alia*, claims for breach of fiduciary duty and bad faith. On November 27, 2018, the trial court denied Erie Insurance's petition to modify the arbitration award. Thereafter, in January 2019, Erie Insurance tendered payment of the balance of the arbitration award, $50,000.00, to Gambone.

Concerning Gambone's claims against Erie Insurance, the trial court bifurcated the action into a non-jury trial for purpose of determining liability and, if necessary, a subsequent non-jury trial to determine damages. Trial Court Order, 8/23/21. On October 12, 2022, the trial court entered a non-jury verdict in favor of Gambone and against Erie Insurance on the claim of bad faith. Verdict, 10/12/22. On January 10, 2024, the trial court entered a damage award in favor of Gambone and against Erie Insurance in the amount of $1,754,188.24. Verdict, 1/10/24 at 15. The damage award was comprised of $659,007.90 for interest, $217,100.00 for attorneys' fees, and $986.22 for court costs. *Id.* at 14-15. The damage award also included $877,094.12 for punitive damages. *Id.* at 15.

On January 22, 2024, Erie Insurance filed a motion for post-trial relief, seeking a judgment *non obstante verdicto*. On February 9, 2024, Gambone filed a response to Erie Insurance's post-trial motion. After receiving briefs

from both parties, the trial court, on May 20, 2024, denied the request for post-trial relief.  On May 22, 2024, judgment was entered in favor of Gambone and against Erie Insurance in the amount of $1,754,188.24.  This appeal followed.[4]

Erie Insurance raises the following issues for our review:

1. Whether the entry of judgment [*non obstante verdicto*] in favor of Erie [Insurance] is required because the trial court's finding of bad faith under 42 Pa.C.S.[A.] § 8371 is unsupported by sufficient evidence?

2. Whether the entry of partial judgment [*non obstante verdicto*] in favor of Erie [Insurance] is required to eliminate or reduce the award of attorney[s'] fees under [Section] 8371?

3. Whether the entry of partial judgment [*non obstante verdicto*] in favor of Erie [Insurance] is required to eliminate or reduce the award of interest under [Section] 8371?

Erie Insurance's Brief at 7.

Collectively, Erie Insurance challenges the findings and conclusions following a non-jury trial.  It is well-settled that our review of a non-jury verdict is limited to

> whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law.  We must grant the [trial] court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the [trial] court's findings are unsupported by competent evidence or the [trial] court committed legal error that affected the outcome of the trial.  It is not the role of an appellate court to pass on the

---

[4] Erie Insurance and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

credibility of witnesses[. W]e will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Hollock v. Erie Insur. Exch.*, 842 A.2d 409, 413-414 (Pa. Super. 2004) (citations and quotation marks omitted), *appeal dismissed as improvidently granted*, 903 A.2d 1185 (Pa. 2006). "[A] challenge to the sufficiency of the evidence in a civil trial is a claim that the trial court erred in denying a motion for judgment [*non obstante verdicto*]." *Robins v. Robins*, 338 A.3d 184, 188 (Pa. Super. 2025). Judgment *non obstante veredicto* "is [only] appropriate where the movant is entitled to judgment as a matter of law, or where no two reasonable minds could disagree that, given the evidence, a verdict should have been entered in favor of the movant." *Id.*

Section 8371 provides as follows:

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the [trial] court finds that the insurer has acted in bad faith toward the insured, the [trial] court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

"It is well[-]settled that an insurer is obligated to act in good faith and fair dealing with its insured." ***O'Donnell ex rel. Mitro v. Allstate Insur. Co.***, 734 A.2d 901, 905 (Pa. Super. 1999) (citation omitted). "[T]he purpose of [S]ection 8371 is to provide a statutory remedy to an insured when the insurer denied benefits in bad faith." ***Id.*** (citation and original quotation marks omitted). "[T]o prevail in a bad faith insurance claim pursuant to Section 8371, [an insured] must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the [insurance] policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." ***Rancosky v. Washington Nat'l Insur. Co.***, 170 A.3d 364, 377 (Pa. 2017). "Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured." ***Greene v. United Servs. Auto Ass'n***, 936 A.2d 1178, 1188-1189 (Pa. Super. 2007) (citations omitted), *appeal denied*, 954 A.2d 577 (Pa. 2008).

In reviewing similar bad faith claims under Section 8371, this Court has consistently held that there can be no finding of bad faith where an insurer withholds a portion of an arbitration award because an issue regarding stacking remains unresolved. ***Terletsky v. Prudential Prop. and Cas. Insur. Co.***, 649 A.2d 680, 690 (Pa. Super. 1994) (agreeing that, no bad faith exists when the insurer withholds a portion of the arbitration award because Pennsylvania law regarding stacking is unsettled and still in "flux"), *appeal denied*, 659 A.2d 560 (Pa. 1995); ***see also Hollock***, 842 A.2d at 417

- 6 -

(affirming that, the unsettled state of the law on stacking effectively precluded a showing by the insured that the insurer acted in bad faith when it refused to honor a claim for stacked benefits). Bad faith, however, can exist when the insurer fails to make a "good faith investigation into [the] facts" or fails "to communicate with the claimant." **Green**, 936 A.2d at 1188; **see also Sartain v. United Servs. Auto. Ass'n**, 249 A.3d 1130, at *5 (Pa. Super. filed Feb. 4, 2021) (unpublished decision) (stating that, "bad faith" "includes a lack of good faith investigation, as well as evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance" (original quotation marks and citation omitted)).

Here, the crux of Erie Insurance's sufficiency argument asserts that Erie Insurance had a reasonable basis to withhold $50,000.00 from payment of the arbitration award and to seek a modification of the arbitrator's determination regarding stacking because, according to Erie Insurance, it never agreed that the arbitrator's stacking determination would become binding. **See** Erie Insurance's Brief at 23-24 (stating, Erie Insurance never contested the arbitrator's ability to determine the factual issue of damages within the UIM claim and was only exercising its right to challenge the arbitrator's determination on stacking by withholding payment of $50,000.00). Erie Insurance maintains that it always intended the issue of stacking to be determined by a trial court. **Id.** at 31. Erie Insurance asserts

that "its conduct in this case[,] as identified by the trial court[,] was neither without a reasonable basis, nor in reckless disregard for the lack of a reasonable basis." *Id.* at 25.

The trial court set forth, in detail, its findings of fact before reaching the conclusion that Erie Insurance acted in bad faith when it withheld $50,000.00 in damages from Gambone. *See* Verdict, 10/12/22, at 1-24 ¶¶1-138. We incorporate those findings of fact as if set forth herein.[5] The trial court recognized that Erie Insurance maintained that it "never agreed to waive its right to appeal the arbitrator's decision" but found that Erie Insurance "did not convey that important piece of information to [Gambone]." *Id.* at 30 ¶27. The trial court further found that Erie Insurance's

> position is untenable where there was an agreement to submit all issues to a single arbitrator in a binding arbitration. The refrain that [Gambone] did not ask Erie [Insurance] to waive its right to appeal errors of law completely misses the mark. The duty to communicate flows from Erie [Insurance] to [Gambone]. Erie [Insurance] did not adhere to its duty to keep [Gambone]

---

[5] In reaching its findings of fact regarding Gambone's bad faith claim, the trial court found the testimony of the appointed arbitrator, Michael Shields, Esquire, ("Arbitrator Shields"), Michael Pacchione ("Mr. Pacchione"), an expert in claims handling, and Steven Mezrow, Esquire ("Attorney Mezrow"), counsel for Gambone in the claim against the tortfeasor and at the inception of the UIM claim against Erie Insurance, to be credible. Verdict, 10/12/22, at 24 ¶¶134, 135, and 137. The trial court found the testimony of Megan Rooney ("Ms. Rooney"), a litigation specialist for Erie Insurance, "to be credible at times and simply incredible at other times." *Id.* at ¶136. Finally, the trial court found the testimony of Matthew McGuire, Esquire ("Attorney McGuire"), who represented Erie Insurance during the arbitration proceedings, "to be argumentative, evasive, and incredible more often than not." *Id.* at ¶138.

informed of [Erie Insurance's] purported position. The onus is on Erie [Insurance] to reserve its rights.

*Id.* at 30 ¶¶27-28 (formatting modified). The trial court concluded that

32. Based on the evidence presented and the [trial] court's evaluation of the credibility of the witnesses, the [trial] court concludes that Erie [Insurance] agreed to binding arbitration on the issues of stacking and damages.

33. Based upon [the trial] court's findings and credibility determinations, the [trial] court opines that [Gambone] presented clear and convincing evidence that Erie [Insurance] did not act reasonably in investigating, evaluating, and arbitrating the [UIM] claim and lacked a reasonable basis to [withhold] $50,000.00 of the arbitrator's award and file a petition to modify or correct the arbitrator's award.

34. [The trial] court also concludes that Erie [Insurance] recklessly disregarded its lack of a reasonable basis to file the petition given its agreement with [Gambone regarding arbitration, in] ignoring counsel's letter advising of the claim for bad faith in light of the agreement to allow the arbitrator to decide all issues in a binding arbitration[, and in] the failure to communicate with its insured.

*Id.* at 31-32 ¶¶32-34.

Here, the trial court found, and the record supports, that the parties agreed to participate in a binding arbitration and the arbitrator was tasked with determining, *inter alia*, whether or not Gambone was entitled to receive the benefits of stacking under the terms of the insurance policy. Attorney Mezrow testified that after Gambone filed a cause of action in the Court of Common Pleas of Philadelphia County, Erie Insurance proposed binding arbitration in the Court of Common Pleas of Montgomery County before Arbitrator Shields. N.T., 8/24/21, at 112-113. Attorney Mezrow stated that

his understanding of the binding arbitration agreement was that Arbitrator Shields would decide the issues of liability, stacking, and damages. *Id.* Attorney Mezrow explained that the advantage to the parties of the binding arbitration was to avoid multiple trials and that Gambone only agreed to dismiss the action in the Court of Common Pleas of Philadelphia County upon issuance of an arbitration decision based on the agreement that the arbitration decision would be binding and that Erie Insurance would not have a right to appeal or challenge the award. *Id.* at 113, 117-118, 121-122.

Arbitrator Shields testified that it was his understanding that the parties asked him to decide, *inter alia*, the issue of stacking. *Id.* at 32 (agreeing that, Erie Insurance was in agreement that the issue of stacking would be decided as part of the binding arbitration). Arbitrator Shields further explained that the parties informed him that his arbitration decision was to be a binding and final decision. *Id.* Ms. Rooney acknowledged that Erie Insurance asked Arbitrator Shields to "make a stacking decision as part of his binding award[.]" *Id.* at 90. Ms. Rooney further testified that she never directly informed either Arbitrator Shields or Gambone that Erie Insurance reserved its right to appeal the arbitration decision regarding stacking. *Id.* at 91-92. Attorney McGuire testified that, when he first became involved in the case, his "job" was to get the case moved to arbitration. N.T., 8/25/21, at 17. Attorney McGuire agreed that Erie Insurance asked Arbitrator Shields to make a decision regarding stacking, but maintained that he believed stacking was not an issue at the time of arbitration. *Id.* at 34, 36-37. Attorney McGuire never informed

- 10 -

Arbitrator Shields that he did not have the authority to rule on the stacking issue and that, ultimately, Erie Insurance "allowed" him to rule on the stacking issue. *Id.* at 42. Attorney McGuire maintained that Arbitrator Shields was directed by the trial court that appointed him as arbitrator to decide only the issues of liability and damages. *Id.* at 49. Attorney McGuire further maintained that Erie Insurance never waived its right to appeal the arbitration award. *Id.* at 49-50.

In viewing the evidence in the light most favorable to Gambone, as the verdict winner, and granting Gambone the benefit of every favorable inference, we find there was sufficient evidence to support the trial court's October 12, 2022 verdict.[6] As the trial court found, and the record supports, the parties agreed to submit the UIM claims to a binding arbitration in which the arbitrator was tasked with deciding not only liability but also damages and, as part of the damages determination, the issue of stacking. Erie Insurance never communicated to Gambone that it reserved its right to appeal the arbitration decision or reject the arbitrator's stacking determination. Instead, Erie Insurance participated in the binding arbitration, in which the arbitrator was asked to decide the issue of stacking, and only after Gambone dismissed

_____

[6] In reviewing an order denying a motion for judgment *non obstante verdicto*, "our role is to read the record in the light most favorable to the verdict winner[] and, granting the verdict winner[] the benefit of every favorable inference, to determine if there is sufficient competent evidence to support the verdict." *James v. Albert Einstein Med. Ctr.*, 170 A.3d 1156, 1165 (Pa. Super. 2017).

the UIM claims against Erie in the Court of Common Pleas of Philadelphia County, pursuant to the parties' agreement, did Erie Insurance challenge the arbitration award. Therefore, we discern no abuse of discretion or error of law in the trial court's verdict.

In its second issue, Erie Insurance challenges the sufficiency of the evidence to support the trial court's award of attorneys' fees. Erie Insurance's Brief at 42-51. Erie Insurance asserts that Section 8371 did not permit the trial court to award Gambone $100,000.00 in attorneys' fees "for succeeding on the UIM claim." *Id.* at 43. Erie Insurance argues that Section 8371 only provides for recovery of attorneys' fees when an insured prevails on a claim of bad faith against an insurer and that there is no statutory provision in Section 8371 that permits a "fee-shifting award" for successfully litigating the underlying UIM claim. *Id.* Erie Insurance contends that Gambone was already fully compensated for the UIM claim, including attorneys' fees, and that, by permitting a recovery of $100,000.00 under Section 8371, the trial court was imposing what amounted to double recovery of attorneys' fees for litigating the UIM claim. *Id.* at 44.

Erie Insurance further asserts that the trial court erred in awarding $117,100.00 for attorneys' fees associated with litigating the bad faith claim. *Id.* at 46-50. Erie Insurance argues that the trial court applied a rate-times-hours method for calculating the award of attorneys' fees but that the hours claimed by counsel for Gambone were unsupported by contemporaneous time records and lacked the necessary detail. *Id.* at 46-48.

Erie Insurance contends that "[b]ecause the attorney[s'] fees awarded under the rate-times-hours method are unsupported by contemporaneous time entries, because they are infected throughout by vague and unspecific narratives, and because the time records fail to establish the necessity for the various tasks performed," the trial court erred in awarding attorneys' fees in the amount of $117,100.00. *Id.* at 50. Erie Insurance also asserts that, as part of this award, the trial court erred in awarding attorneys' fees for the time Gambone's counsel spent recreating the time records as part of the bad faith claim. *Id.* at 50-51.

An award of attorneys' fees "is within the discretion of the trial court." ***Zimmerman v. Harleysville Mut. Insur. Co.***, 860 A.2d 167, 174 (Pa. Super. 2004), *appeal denied*, 881 A.2d 820 (Pa. 2005). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused." ***Zimmerman***, 860 A.2d at 174 (citation omitted). An award of attorneys' fees must be reasonable. ***Birth Center v. St. Paul Cos., Inc.***, 787 A.2d 376, 408 (Pa. 2001).

Pursuant to the "American Rule," "absent an express agreement or statutory authority to the contrary, litigants presumptively are responsible for their own costs and attorney[s'] fees." ***Clean Air Council v. Dep't of Env'tal Prot.***, 289 A.3d 928, 934 (Pa. 2023). Section 8371, as detailed *supra*, provides the statutory authority under which a trial court, upon a finding of

bad faith on the part of the insurer, is permitted to award court costs and attorneys' fees to the insured. 42 Pa.C.S.A. § 8371; *see also Off. of Disciplinary Counsel v. Anonymous Attorney*, 327 A.3d 192, 201 (Pa. 2024) (stating, "Section 8371 is a fee-shifting statute which permits an insured to recover attorneys' fees from the insurer").

This Court previously held that "when calculating a reasonable [attorneys'] fee under Section 8371, the trial court must consider the factors set forth in [Pennsylvania Rule of Civil Procedure 1717]." *Birth Center v. St. Paul Cos., Inc.*, 727 A.2d 1144, 1160 (Pa. Super. 1999), *aff'd on other grounds*, 787 A.2d 376 (Pa. 2001).[7] Rule 1717 states that

> In all cases where the [trial] court is authorized under applicable law to fix the amount of counsel fees[,] it shall consider, among other things, the following factors:
>
> (1) the time and effort reasonably expended by the attorney in the litigation;
>
> (2) the quality of the services rendered;
>
> (3) the results achieved and benefits conferred upon the class or upon the public;

---

[7] We recognize that our Supreme Court, in *Mishoe v. Erie Insur. Co.*, 824 A.2d 1153 (Pa. 2003), noted its disapproval of "certain *dicta* contained in a footnote" in this Court's decision in *Birth Center v. St. Paul Cos., Inc.*, 727 A.2d 1144 (Pa. Super. 1999), namely where this Court held that a litigant had the right to have a jury determine the attorneys' fees awarded under Section 8371. *Mishoe*, 824 A.2d at 1157 n.3 (disapproving of the *dicta* "that Section 8371 does provide for the right to a jury trial"); *see also Birth Center*, 727 A.2d at 1160 n.10. The *Mishoe* Court held that, under Section 8371, the plaintiff does not have a right to a jury trial for purpose of determining attorneys' fees awarded under Section 8371. *Mishoe*, 824 A.2d at 1156.

(4) the magnitude, complexity and uniqueness of the litigation; and

(5) whether the receipt of a fee was contingent on success.

Pa.R.Civ.P. 1717.

"[T]he manner by which attorneys' fees are determined in this Commonwealth, under fee-shifting provisions, is the lodestar approach. The lodestar is the product of the number of hours reasonably expended on the litigation times a reasonable hourly rate." ***Krishnan v. Cutler Grp., Inc.***, 171 A.3d 856, 903 (Pa. Super. 2017) (citation and original quotation marks omitted).

> The calculation of a reasonable fee should begin with the actual number of hours spent in pursuing the claim multiplied by a reasonable rate. Both the number of hours and the rate per hour shall be calculated on a basis reasonably reflective of the relevant market and the magnitude, complexity and uniqueness of the claim and the related task.

***Birth Center***, 727 A.2d at 1160-1161 (footnote omitted). Under Section 8371, the insured may recover attorneys' fees incurred in pursuing his or her rights under the insurance policy or protecting the insured's interests, as well as attorneys' fees incurred in pursuing the bad faith claim. ***Id.*** at 1160 n.11; ***see also Bonenberger v. Nationwide Mut. Insur. Co.***, 791 A.2d 378, 383 (Pa. Super. 2002) (agreeing that, Section 8371 permits a litigant to recover attorneys' fees incurred in pursuing the underlying UIM claim, as well as the bad faith claim).

At the damages trial, Michael O. Pansini, Esquire ("Attorney Pansini") testified that Gambone requested an award of $269,517.50 for attorneys' fees. This request was based upon the following calculation:[8]

| Attorney Pansini | $700/hr. | 46.1 hrs. | $32,270.00 |
| --- | --- | --- | --- |
| Attorney Mezrow | $650/hr. | 200.1 hrs. | $130,065.00 |
| Attorney Davis | $450/hr. | 113.1 hrs. | $50,895.00 |
| Attorney Pizzica | $375/hr. | 150.1 hrs. | $56,287.50 |

N.T., 3/28/23, at 61-62.[9]

The trial court calculated the award for attorneys' fees as follows:

> Upon review of the case law interpreting [Section 8371, the trial] court has taken into particular account the complexity of the UIM case and the claim for bad faith[,] as well as [Attorney Pansini's] admission that [his law firm] charge[s] on a contingency basis, in addition to the other three categories the [trial] court must consider [pursuant to Rule 1717] to arrive at the amount for attorney[s'] fees as follows:
>
> A. For the period of May 1, 2006, through August 31, 2016, [the trial] court will award attorney[s'] fees for succeeding on the UIM claim in the amount of [$100,000.00, which represents] one-third of the arbitration award[.]

---

[8] For ease of identification, the other attorneys involved were Adam C. Davis, Esquire ("Attorney Davis") and David B. Pizzica, Esquire ("Attorney Pizzica").

[9] We note that, although the court reporter filed a *praecipe* to attach the exhibits admitted at the damages trial to the notes of testimony, the exhibits were, in fact, not attached to the notes of testimony and are not part of the certified record submitted to this Court.

B. For the period beginning September 1, 2016, the [trial] court will award the following amounts broken out by attorney:

i.   [Attorney] Pansini at $450/hr    $11,745.00

ii.  [Attorney] Mezrow at $400/hr    $41,040.00

iii. [Attorney] Davis at $300/hr      $26,790.00

iv. [Attorney] Pizzica at $250/hr     $37,525.00

                       Total:       $117,100.00

Verdict, 1/10/24, at 12 ¶12 (extraneous capitalization omitted). In total, the trial court awarded $217,100.00 in attorneys' fees. In calculating its award of $117,100.00 in attorneys' fees related to the bad faith claim, the trial court determined that Attorney Pansini worked 26.1 hours, Attorney Mezrow worked 102.6 hours, Attorney Davis worked 89.3 hours, and Attorney Pizzica worked 150.1 hours. Thus, in calculating the award, the trial court adjusted the hourly rate for each attorney and, in most instances, reduced the number of hours each attorney allocated towards the bad faith claim in comparison to the request made by Gambone.

We reiterate that "as a general rule, the method of determining reasonable attorneys' fees under fee-shifting provisions in Pennsylvania is the lodestar approach[.]" **Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 790 (Pa. Super. 2006); **see also Krishnan**, 171 A.3d at 903; **Richards v. Ameriprise Fin., Inc.**, 305 A.3d 1013, at *4 (Pa. Super. filed Sept. 26, 2023) (unpublished memorandum), *appeal denied*, 320 A.3d 664 (Pa. 2024). A contingency fee agreement "is just one of many factors to

consider in arriving at an award of a reasonable attorneys' fee," and the contingency fee agreement cannot "create a ceiling" on the amount of reasonable attorneys' fees a party may recover under a fee-shifting provision. *Krishnan*, 171 A.3d at 903; *see also Krebs*, 893 A.2d at 790 (explaining that, a contingency fee agreement can aid a trial court in determining the reasonableness of an award of attorneys' fees because the fee agreement "can aid in demonstrating an attorney[s'] remunerative expectations"). "[T]he responsibility for setting [reasonable attorneys'] fees lies primarily with the trial court" and [appellate courts] have "limited power of review" because "the trial court [] has the best opportunity to judge the attorneys' skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved." *Carmen Enter., Inc. v. Murpenter, LLC*, 185 A.3d 380, 389-390 (Pa. Super. 2018) (stating that, "[w]hat is a fair and reasonable fee is sometimes a delicate, and at times a difficult[,] question"), *appeal denied*, 201 A.3d 725 (Pa. 2019). "[T]he burden is on the claimant to justify a fee request." *Carmen*, 185 A.3d at 390.

Upon review, we find that the trial court erred as a matter of law and abused its discretion in awarding $100,000.00 for attorneys' fees related to the UIM claim. The trial court basing its award solely on a percentage of the arbitration award and, in so doing, allowed the contingency fee agreement to

serve as a ceiling on the fee award.[10]  The trial court was required, instead, to apply the lodestar approach by first determining a reasonable number of hours spent by the attorneys to litigate the UIM claim and multiply those hours by what the trial court determines is a reasonable hourly rate for each attorney.[11]  In making its determination under the lodestar approach, the trial court is permitted to consider, as one of its factors, the contingency fee agreement.[12]  The amount of fees Gambone's counsel was entitled to receive, pursuant to the contingency fee agreement, based upon the recovery in the underlying UIM claim cannot, however, serve as a "ceiling" or a determination

_____

[10] At the damages trial, Attorney Pansini, when speaking generally about contingency fee agreements, explained that "agreements are typically either one-third or forty percent of a recovery."  Verdict, 1/10/24, at 5 ¶16; **see also** N.T., 3/28/23, at 79.  Attorney Pansini further testified, however, that he could not recall the fee percentage contained in the continency fee agreement between his firm and Gambone.  N.T., 3/28/23, at 71.  Moreover, as the trial court noted, and the record supports, counsel for Gambone did not introduce into evidence a copy of the contingency fee agreement at the damages trial.  Therefore, we find there was insufficient evidence to support the trial court's determination that the contingency fee agreement called for a fee of one-third of any recovery received as part of the underlying UIM claim.

[11] At the damages trial, Attorney Pansini explained that, in order to determine an hourly rate for each attorney, since his firm generally represented clients on a contingency fee basis, he relied upon a fee schedule provided by Community Legal Services ("CLS") to "see what the fair hourly rate is for lawyers given a certain amount of experience."  N.T., 3/28/23, at 54.  A CLS "fee schedule is primarily for the benefit of CLS, and secondarily a reference for lawyers who have prevailed in a public interest cause of action."  **Carmen**, 185 A.3d at 391.

[12] On remand, the exact fee percentage set forth in the contingency fee agreement that was in place for purpose of litigating the UIM claim needs to be proven.

of the attorneys' fees recoverable under Section 8371. ***Krishnan***, 171 A.3d at 903.

In examining the award of $117,100.00 in attorneys' fees associated with the bad faith claim, we find we are unable to properly review this award of attorneys' fees. As noted *supra*, the trial court reduced, without explanation or analysis, the requested number of attorney hours spent litigating the bad faith claim and the requested hourly rates for each attorney. Although the trial court stated that, in making its award of attorneys' fees, it considered the factors under Rule 1717, the trial court did so in "a broad-brush approach" without setting forth sufficient explanation that would allow us to review the reasonableness of the adjustments the trial court applied to the hours accepted by the trial court and the hourly rates assigned to each attorney.[13] "It is our expectation that a trial court assessing the reasonableness of attorney[s'] fees will thoroughly scrutinize the specific line items that are challenged, generally evaluate the reasonableness of the expenditure of time for the services listed in the fee petition, make adjustments when they are warranted, **and explain its reasons for the award**." ***Richards v. Ameriprise Fin., Inc.***, 217 A.3d 854, 872 (Pa. Super. 2019) (emphasis added). As such, we find the trial court erred as a matter of law and abused

_____

[13] We find no further explanation supporting the trial court's decision in its Rule 1925(a) opinion, which reiterates that the trial court considered the Rule 1717 factors and "reduced each attorney's requested hourly rate[,] as well as the total number of hours." ***See*** Trial Court Opinion, 1/31/25, at 34.

its discretion in awarding attorneys' fees because the trial court did not apply the lodestar approach and explain, in detail, why certain legal work was included in the recovery and why adjustments were made to the rates and hours entered into evidence.[14]

---

[14] Contrary to Erie Insurance's assertion, we find that Rule 8371 does not require a record of hours spent litigating a claim to be made contemporaneously with the events recorded to allow for recovery of attorneys' fees under Section 8371. As is often the case, and is certainly true in the case *sub judice*, UIM claims, as well as subsequent bad faith claims under Section 8371, are handled on a contingency fee basis. If contemporaneous time records were required to be kept, the contingency fee nature of handling these types of cases would be eroded and, ultimately, this would negatively impact the litigating of bad faith claims, as well as undermine the purpose of Section 8371, which is to provide an insured with a means of protection against an insurer's bad faith denial of coverage. In reaching this conclusion, we are guided by our Supreme Court's decision in ***Samuel-Bassett v. Kia Motors Am., Inc.***, 34 A.3d 1 (Pa. 2011). In ***Samuel-Bassett***, our Supreme Court examined the award of attorneys' fees under a federal statute, which specifically provided that the litigant may recover, *inter alia*, "attorneys' fees **based on actual time expended**." ***Samuel-Bassett***, 34 A.3d at 52 (emphasis added). The ***Samuel-Bassett*** Court reasoned that because the federal statute explicitly described the attorneys' fees permitted to be recovered as fees "based on actual time expended" that the lodestar calculation involved only "the actual hours expended and billed by the attorneys in the case" and no assessment, by the trial court, to determine a reasonable number of hours, was necessary. ***Id.*** In the case *sub judice*, Section 8371 does not expressly limit the scope of recoverable attorneys' fees to the actual hours expended and billed by the attorneys, as the federal statute purports to do. Therefore, it is within the discretion of the trial court to permit counsel to "recreate" time sheets of hours expended and to determine if those hours are reasonably based upon the factors set forth in Rule 1717. Moreover, Section 8371 does not limit the type of hours to be considered by the trial court and, as such, it is within the discretion of the trial court to permit recovery of hours reasonably spent "recreating" the time logs of hours spent litigating the claim.

In its third issue, Erie Insurance challenges the sufficiency of the evidence to support the trial court's award of interest. Erie Insurance's Brief at 52-58. In so doing, Erie Insurance argues that the trial court erred in determining that the term "claim," used within the context of Section 8371 for purpose of calculating interest, referred to the date the underlying UIM claim was asserted. *Id.* at 53-54. Erie Insurance contends, instead, that the term "claim" refers to the date the bad faith claim was asserted. *Id.* Similarly, Erie Insurance asserts that the trial court erred in determining that the term "claim" referred to the award received pursuant to the UIM claim ($300,000.00). *Id.* at 55. Erie Insurance contends, instead, that the term "claim," as used within the context of Section 8371, refers to the bad faith claim, which in this instance involved only $50,000.00, the portion of the arbitration award Erie Insurance withheld from payment. *Id.* Erie Insurance "submits that the trial court erred in concluding that interest on the claim was

_____

To be clear, the right to recover for an insurer's bad faith under Section 8371 is not limited to recovery of only the attorneys' fees and court costs expended in filing and litigating the bad faith claim. Section 8371 simply states that where an insurer's bad faith is established, the trial court at its discretion may award attorneys' fees, court costs, punitive damages, and interest. The only limit placed on an award of attorneys' fees under a fee-shifting provision such as Section 8371 is that the fees must be determined using the lodestar approach and the number of hours and the monetary rate used to calculate the award must be reasonable. Otherwise, at the discretion of the trial court, an insured may recover attorneys' fees and court costs related not only to filing and litigating the bad faith claim but also attorneys' fees and costs for filing and litigating the underlying claim for insurance coverage, which in the case *sub judice* includes attorneys' fees and costs for filing and litigating the UIM claim, as well as the arbitration matter.

available under [Section] 8371 for any time prior to the arbitration award entered on August 31, 2016, and for any amount above $50,000[.00]." *Id.* at 56. Finally, Erie Insurance contends that the trial court erred in compounding the interest absent an agreement by the parties or pursuant to statutory authority. *Id.* at 56-57.

In awarding interest in the amount of $659,007.90, the trial court reached the following conclusions:

6. The [trial] court concludes that, pursuant to Pennsylvania law, the date "the claim" was made as it relates to [Section 8371(1)] is May 2, 2006.

7. [Gambone] seek[s] interest in the total amount of $659,007.90, calculated on a compound basis beginning May 1, 2006, through December 7, 2022, on the principal amount of $300,000.00.

8. Erie [Insurance] contends that an award of interest, if any, should be calculated for the time period of September 1, 2016, through March 31, 2023, and that the principal amount should be $50,000.00, again coinciding with the filing of the petition to modify the arbitrator's award and the disputed amount.

9. The [trial] court [awards] interest in the amount of $659,007.90.

Verdict, 1/10/24, at 11 ¶¶6-9 (extraneous capitalization and record citations omitted).[15]

---

[15] The trial court, in its Rule 1925(a) opinion, offered no further explanation of the basis for its interest award other than to state, "In this case, the [trial] court concluded that 'the claim' was made pursuant to Pennsylvania law, on May 2, 2006, and the principal amount was $300,000.00. The [trial] court properly exercised its discretion in awarding the amount of $659,007.90 in interest." Trial Court Opinion, 1/31/25, at 33.

As stated *supra*, Section 8371 provides the trial court with discretion to award interest, as part of a bad faith claim, "on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%." 42 Pa.C.S.A. § 8371(1).

> [An appellate court's] interpretation of Section 8371, and indeed of all statutes, is guided by the Statutory Construction Act, 1 Pa.C.S.[A.] §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. However, when the words of a statute are not explicit, the General Assembly's intent may be ascertained by considering matters other than the statutory language, such as the occasion and necessity for the statute, the circumstances of the statute's enactment, the object the statute seeks to attain, and the consequences of a particular interpretation. Moreover, technical words and phrases that have acquired a peculiar and appropriate meaning shall be construed according to such peculiar and appropriate meaning.

*Rancosky v. Washington Nat'l Insur. Co.*, 170 A.3d 364, 371 (Pa. 2017) (some citations omitted). Section 8371 does not define the term "claim."[16] As such, when Section 8371 is read in a vacuum, Section 8371 provides little guidance as to the meaning of the term "claim." Therefore, we turn to other tools of statutory interpretation.

Black's Law Dictionary defines the term "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if

---

[16] "Issues of statutory interpretation present [appellate courts] with questions of law [for which] our standard of review is *de novo* and our scope of review is plenary." *Rancosky*, 170 A.3d at 370.

contingent or provisional." BLACK'S LAW DICTIONARY 311 (11th ed. 2019). Within the context of the definition of "claim," Black's Law Dictionary defines the term "insurance claim" as "[a] policyholder's formal report to an insurance company about a loss with a request for a payment based on the insurance policy's terms." *Id.* We, therefore, find that the term "claim," as used within the context of Section 8371, refers to the moment when an insured makes a request to the insurer for payment based upon the insurance policy's terms. *See* 1 Pa.C.S.A. § 1903 (stating "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition."). This conclusion is further supported by the decision of this Court in *Birth Center*, *supra*, wherein we held that "[t]he term 'claim' [as it pertains to Section 8731] is not limited to the bad faith claim."[17] *Birth Center*, 727 A.2d at 1160 n.11; *see also Grossi v. Travelers Pers. Insur. Co.*, 79 A.3d 1141, 1162 (Pa. Super. 2013) (agreeing that, Section 8371 does not define the term

_____

[17] We find Erie Insurance's reliance on our Supreme Court's decision in *Rancosky*, *supra*, for the proposition that that the term "claim" refers only to the bad faith claim, to be misplaced. *See* Erie Insurance's Brief at 54 (stating, "[i]n *Rancosky*, [our] Supreme Court recognized [] that the concept of a claim for bad faith 'had acquired a particular meaning' through common law"). Rather, in *Rancosky*, our Supreme Court stated that the term "bad faith" (without reference to the term "claim") "had acquired a particular meaning." *Rancosky*, 170 A.3d at 373.

"claim" "and there is no basis to limit its meaning"); ***Bonenberger***, 791 A.2d at 383. Because the General Assembly did not define the term "claim," or place any restrictions on its use, we find no basis for concluding that the General Assembly intended to limit the recovery of interest to the date of filing of the bad faith claim. ***See Samuel-Bassett***, 34 A.3d at 51 (stating, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). Moreover, as our Supreme Court in ***Rancosky*** explained, the legislative intent of Section 8371 was to provide an insured with a statutorily prescribed right to recover for bad faith actions by an insurer in an effort to deter an insurer from refusing to cover a loss under the insurance policy in bad faith. ***Rancosky***, 170 A.3d at 371; ***see also O'Donnell***, 734 A.2d at 905 (stating, "the purpose of [S]ection 8371 is to provide a statutory remedy to an insured when the insurer denied benefits in bad faith"). We find that our definition of the term "claim," which encompasses both the bad faith claim, as well as the underlying claim for recovery under the insurance policy, promotes the legislative purpose of Section 8371 by allowing an insured to recover interest for the entire time the insured was delayed in receiving the policy benefits as a result of the insurers' bad faith. By allowing a broader period of time during which interest may be calculated, an insurer is further deterred from acting in bad faith or risk a larger award of interest. Therefore, we discern no error in the trial court's

award of interest calculated from the date on which Gambone first made a UIM claim for recovery under the insurance policy, which was May 2, 2006.[18]

As to the question of whether, or not, Section 8371 permits an award of interest calculated on a compounded interest basis, we find that it does not.[19] It was well-established that "the law in this Commonwealth frowns upon compound interest and[,] as such[,] will only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it." **Powell v. Ret. Bd. of Allegheny Cnty.**, 246 A.2d 110, 115 (Pa. 1968), *citing* **Murray v. Prudential Insur. Co. of Am.**, 18 A.2d 820, 823 (Pa. Super. 1941). Therefore, at the time Section 8371 was first enacted in 1990, the General Assembly understood that, to permit the compounding of interest under Section 8371, the statute must explicitly state that interest is permitted to be calculated on a compounding basis. Section 8371 does not state that interest shall be calculated on a compounded interest basis but, rather, simply states that interest may be awarded "on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%." 42 Pa.C.S.A. § 8371(1). As such, we

---

[18] We note that the trial court accepted Gambone's calculation of interest ($659,007.90) based upon a claim date of May 1, 2006. The claim date is, in fact, May 2, 2006.

[19] "[I]nterest is compounded when it is added to the principal, the result of which is treated as a new principal for calculating the interest due for the next term." **Katzeff v. Fazio**, 628 A.2d 425, 430 (Pa. Super. 1993).

find that the trial court erred in calculating its award of interest on a compounded interest basis.[20]

For the reasons set forth herein, we are constrained to vacate the May 22, 2024 judgment. In so doing, we affirm the October 12, 2022 verdict entered in favor of Gambone and against Erie Insurance on the claim of bad faith. We vacate the January 10, 2024 verdict entered in favor of Gambone and against Erie, in part, to the extent that the trial court awarded interest in the amount of $659,007.90 and attorneys' fees in the amount of $217,100.00. We remand the case for further proceedings on the issues of attorneys' fees and interest in accordance with this decision.

Judgment vacated. October 12, 2022 verdict affirmed. January 10, 2024 verdict vacated, in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2025

---

[20] We note that the trial court awarded interest for the period of May 1, 2006 through December 7, 2022. We find that, pursuant to Section 8371, the trial court, at its discretion would be permitted to award interest from May 2, 2006, the date the UIM claim was first made, to January 10, 2024, the date on which the trial court filed its decision on the issue of damages. The interest cannot, however, be calculated on a compounded interest basis.